Steven ABRAHAMSON, et al.,
complainants, Relators,

v.

The ST. LOUIS COUNTY SCHOOL
DISTRICT, Independent School District No. 2142, et al., Respondents,

Office of Administrative Hearings,
Respondent.

No. A10–2162.

Court of Appeals of Minnesota.

Aug. 1, 2011.

Erick G. Kaardal, Mohrman & Kaardal P.A., Minneapolis, MN, for relators.

Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn & Deans P.A., Mendota Heights, MN, for The St. Louis County School District, et al.

Lori Swanson, Attorney General, St. Paul, MN, for respondent Office of Administrative Hearings.

Considered and decided by MINGE, Presiding Judge; PETERSON, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

By writ of certiorari relators appeal from an administrative-law judge's dismissal of their complaint for failing to allege a prima facie violation of Minnesota Statutes chapter 211A or section 211B.06. We affirm in part, reverse in part, and remand.

## FACTS

On November 4, 2010, relators Stephen Abrahamson and Tim Kotzian filed with the Minnesota Office of Administrative Hearings (OAH) a complaint against respondents St. Louis County School District, Independent School District No. 2142, and the seven members of its school board. Abrahamson is the mayor of the City of Tower, and Kotzian is chair of the coalition for community schools. Relators allege violations of the fair-campaign-practices and campaign-finance acts.

According to the complaint, the school district and board members caused a ballot-question election to be held on December 8, 2009. The ballot question sought voters' authorization to issue general-obligation school-building bonds in an amount not to exceed $78.8 million. Relators allege that, prior to the election, the school district and board promoted the passage of

the ballot question through the use of public funds. Relators further allege that the school district and board allowed contributions, approved expenditures, and encouraged the district to incur expenses or to otherwise accept in-kind contributions. They generally allege that the public funds belonged equally to proponents and opponents of the ballot question and that the school district's use of funds to promote the passage of the ballot question was an unlawful expenditure not authorized by the legislature.

Relators specifically allege that the school district used public funds to pay Johnson Controls Inc. for its assistance in preparing and disseminating newsletters and other materials to residents of the school district to promote the passage of the ballot question. Relators allege that the school district and its board allowed, approved, and encouraged the costs with knowledge of the relevant financial-reporting requirements under Minnesota law. According to the complaint, neither the school district nor the board filed any financial reports relating to the ballot question.

Relators allege that the school district and board violated the following statutes: Minn.Stat. §§ 211A.02, .03, .05, and .06 (2010), by expending more than $750 related to the ballot question and knowingly failing to file financial reports; Minn.Stat. § 211B.06 (2010), by disseminating material that included false statements concerning the effect of the ballot question; and Minn.Stat. § 211B.15, subd. 9, (2010), by contributing to a media project controlled by the school district to encourage passage of the ballot question.

On November 9, an OAH administrative-law judge (ALJ) dismissed relators' complaint for failure to allege prima facie violations of Minn.Stat. §§ 211A.02, .03, .05, .06, 211B.06, or 211B.15, subd. 9. In a memorandum accompanying the order, the ALJ stated that, because neither the school district nor board members are a "candidate" or a "committee," as defined in chapter 211A, they are not subject to the reporting requirements of chapter 211A. The ALJ further stated that, even if the district were subject to the filing requirements in chapter 211A, the expenditures at issue are election-related expenditures not within the definition of "disbursement" in chapter 211A, and therefore not subject to reporting. Concerning the alleged false statements, the ALJ concluded that the statements are either not demonstrably false or are opinion and not within the purview of section 211B.06. And, concerning relators' claim that the school district violated section 211B.15, subdivision 9, by contributing to a media project it controlled to encourage passage of the ballot question, the ALJ concluded that the claim failed because neither the school district nor its board members fall within the definition of "corporation" applicable to that section.

Relators petition for a writ of certiorari.

## ISSUES

I. A school district, school board, and board members fall within the statutory definition of "committee" under Minnesota Statutes, chapter 211A?

II. Are the school district's expenditures made in connection with the ballot-question election "disbursements" subject to campaign-finance-reporting requirements under chapter 211A?

III. Does relators' complaint set forth a prima facie violation of Minnesota Statutes section 211B.06?

## ANALYSIS

◼ To set forth a prima facie violation of chapter 211A or 211B, a complaint filed

with the OAH must "include evidence or allege facts that, if accepted as true, would be sufficient to prove a violation of chapter 211A or 211B." *Barry v. St. Anthony–New Brighton Indep. Sch. Dist. 282,* 781 N.W.2d 898, 902 (Minn.App.2010). If an ALJ determines that the complaint does not set forth a prima facie violation, the ALJ must dismiss the complaint. Minn. Stat. § 211B.33, subd. 2(a) (2010). A reviewing court may affirm a decision dismissing a complaint, remand for further proceedings, or "reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are" affected by error of law or "unsupported by substantial evidence in view of the entire record." Minn. Stat. § 14.69 (2010).

■ In this case, the ALJ concluded in his order memorandum that "the St. Louis County School District and its Board members are neither a candidate nor a committee within the meaning of chapter 211A, and are not required to report contributions or disbursements through the reporting requirements of that chapter." "When a decision turns on the meaning of words in a statute or regulation, a legal question is presented. In considering such questions of law, reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minn. Dep't of Human Servs.,* 437 N.W.2d 35, 39–40 (Minn.1989) (citations omitted).

## I. Application of Reporting Requirements in Chapter 211A

The ALJ acknowledged in his order memorandum that if the school district and board members "fall within the statutory definition of a 'committee' as either a corporation or an association, the reporting requirements of chapter 211A may apply," but the ALJ concluded otherwise as quoted above. On appeal, both relators and respondents argue that the statute is clear and unambiguous, but their interpretations are opposite. Relators argue that the school district, school board, and board members are included in the unambiguous meaning of "committee," while respondents argue that neither the school district, school board, nor its members are included in the plain meaning of "committee."

■ We review the ALJ's statutory interpretation de novo. *See Barry,* 781 N.W.2d at 901 (stating that this court reviews questions of statutory interpretation de novo). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). "Every law shall be construed, if possible, to give effect to all its provisions." *Id.* "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* Courts presume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17(1) (2010). If a statute's language is clear and unambiguous, a reviewing court must give effect to its plain meaning and refrain from engaging in any further interpretation. *State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004). A statute is ambiguous if the language used in the statute is subject to more than one reasonable interpretation. *State v. Wukawitz,* 662 N.W.2d 517, 525 (Minn.2003).

In relevant part, chapter 211A defines "committee" broadly as a "corporation or association or persons acting together to ... promote or defeat a ballot question." Minn.Stat. § 211A.01, subd. 4 (2010). The legislature did not qualify the general

terms or explicitly exclude any types or categories of corporations, associations, or persons acting together. The general terms and the disjunctive "or" in the statutory language provide a broad and expansive definition of "committee," not a narrow and restrictive definition. We address separately whether the school district and its board members are included in the definition of committee under section 211A.01, subdivision 4.

### A. School District

■ The ALJ concluded that the school district is not a "committee" within the meaning of section 211A.01, subdivision 4, because it is defined as a municipality for purposes of municipal tort liability under Minn.Stat. § 466.01 (2010) and municipal contracting law under Minn.Stat. § 471.345 (2010), and because it is classified as a public corporation under Minn. Stat. § 123A.55 (2010). We disagree with the ALJ's conclusion. We conclude that the plain and unambiguous meaning of "committee" in chapter 211A includes school districts.

Under section 211A.01, subdivision 4, a corporation is a committee. "Corporation" is defined as "[a] body that is granted a charter recognizing it as a separate legal entity having its own rights, privileges, and liabilities distinct from those of its members," "[s]uch a body created for purposes of government," and "[a] group of people combined into or acting as one body." *The American Heritage Dictionary of the English Language* 410 (4th ed.2000) [hereinafter *American Heritage Dictionary* ]. And, in multiple instances, Minnesota law defines a school district as a "municipal corporation" or "public corporation." *E.g.*, Minn.Stat. § 123A.55; *Dep't of Highways v. O'Connor*, 289 Minn. 243, 245, 183 N.W.2d 574, 576 (1971); *Village of Blaine v. Indep. Sch. Dist. No. 12*, 272 Minn. 343, 350, 138 N.W.2d 32, 38 (1965).

A "public corporation" is a corporation "created by the state as an agency in the administration of civil government." *Black's Law Dictionary* 393 (9th ed.2009). Nothing in the plain language of section 211A.01, subdivision 4, qualifies or restricts the term "corporation" or excludes public corporations from its plain meaning. Statutory categorization of school districts as "public corporations" therefore supports, rather than hinders, a conclusion that school districts fall within the meaning of "committee." We conclude that a school district, as a public corporation, is a "committee" within the meaning of section 211A.01, subdivision 4.

Respondents argue that this court should construe the meaning of "corporation" in section 211A.01, subdivision 4, in accordance with its definition in Minnesota Statutes section 211B.15, subdivision 1, which appears not to include public corporations. Respondents argue without authority that the legislature intended that this limited definition of "corporation" be applied to preclude a school district's inclusion as a "committee" in section 211A.01, subdivision 4. But respondents' argument is misplaced because section 211B.15, subdivision 1, specifically provides that the definition of "corporation" is "[f]or purposes of this section." Nothing in the language of section 211B.15, subdivision 1, or chapter 211A suggests that the limitations in the definition of "corporation" in section 211B.15, subdivision 1, apply to the meaning of "corporation" in section 211A.01, subdivision 4.

Respondents also argue that, because "school district" is defined in Minnesota Statutes section 200.02, subdivision 19, as "an independent, special, or county school district," and is not included in the definition of committee in section 211A.01, subdivision 4, a school district cannot be included in the definition of committee under section 211A.01, subdivision 4. But chapter

200 also defines "political party," "major political party," and "eligible voter." Minn.Stat. § 200.02, subds. 6, 7, 15 (2010). And respondents' reasoning would lead to the absurd result that because political parties, major political parties, and eligible voters are defined in chapter 200 but not included in the definition of committee in section 211A.01, subdivision 4, they cannot be deemed a committee within the meaning of section 211A.01, subdivision 4, and, therefore, are not subject to the reporting requirements in chapter 211A. We reject respondents' argument.

We conclude that a school district falls within the unambiguous statutory definition of "committee" in chapter 211A. Accordingly, a school district is subject to campaign-finance reporting requirements under Minn.Stat. §§ 211A.02, .03, .05, and .06. The ALJ erred by concluding that the school district is not a "committee" within the meaning of chapter 211A and not subject to campaign finance reporting.

**B.  School Board Members**

█ Although "committee" includes "persons acting together to . . . promote or defeat a ballot question," Minn.Stat. § 211A.01, subd. 4, the ALJ distinguished the board members from an "*ad hoc* citizens group formed for the specific purpose of promoting or defeating a ballot question," and concluded that they are "elected policy-makers for the district" and not a "committee" as defined in chapter 211A. We disagree. Members of a school board are persons, and according to the complaint, the board members took action to promote a ballot question. Therefore, under the plain language of the statute, the board members are a "committee."

Respondents argue that the board members are not a "committee." They point to section 211A.05, subdivision 1, which states that "[t]he treasurer of a committee formed to promote or defeat a ballot ques-

tion" is guilty of a misdemeanor if the treasurer intentionally fails to file a required report or certification required. Respondents assert that the legislature intended "committee" to mean only "a committee formed to promote or defeat a ballot question."

But section 211A.01, subdivision 4, states that, " 'Committee' means a corporation or association or *persons acting together* to influence the nomination, election, or defeat of a candidate or to *promote or defeat a ballot question*." (Emphasis added.) Respondents' argument ignores the plain language of the statute. We disagree that, by providing the penalty applicable to a treasurer of a "committee formed to promote or defeat a ballot question," section 211A.05, subdivision 1, shows a legislative intent to qualify the meaning of "committee" for the entire chapter. Respondents argue that ignoring the section 211A.05 language leads to an absurd result because a "committee" not "formed to promote or defeat a ballot question," will not be subject to a penalty. But respondents' argument is unconvincing because section 211A.11 includes penalties for violations of chapter 211A for which no other penalty is provided.

We conclude that school board members fall within the unambiguous statutory definition of "committee" in chapter 211A. Accordingly, board members are subject to campaign-finance reporting requirements under Minn.Stat. §§ 211A.02, .03, .05, and .06. The ALJ erred by concluding that the board members are not a "committee" within the meaning of chapter 211A and not subject to campaign finance reporting.

**II.  School District's Expenditures Described in the Complaint Constitute "Disbursements" under Chapter 211A**

A committee that makes disbursements of more than $750 in a calendar year is

subject to campaign-finance reporting requirements. Minn.Stat. § 211A.02. A "disbursement" includes "money, property, office, position, or any other thing of value that passes or is directly or indirectly conveyed, given, promised, paid, expended, pledged, contributed, or lent." Minn.Stat. § 211A.01, subd. 6 (2010). A disbursement "does not include payment by a ... school district or other political subdivision for election-related expenditures required or authorized by law." *Id.*

Relators allege in their complaint that the school district paid money for the preparation and publication of materials promoting passage of the ballot question and postage for mailing the publications. Relators argue that the expenditures are unauthorized by law. Because the expenditures at issue are monies that were conveyed, they fall within the statute's broad definition of "disbursements." *See id.* (defining "disbursement" to include "money ... directly or indirectly conveyed"). Without making specific findings or citing authority, the ALJ concluded that even if the school district were a "candidate" or "committee" subject to filing requirements, the expenses at issue fall within the exemption for election-related expenditures and are not "disbursements." No caselaw addresses the meaning of "disbursements" or the scope of the exemption for "election-related expenditures." We must determine whether the school district's expenditures fall within the exemption for election-related expenses "required or authorized by law." *See id.*

■ We first consider whether the expenses are required by law. Section 204B.32, subdivision 1(d), requires school districts to compensate election judges and sergeants-at-arms. School districts are also required to cover the costs of "printing the school district ballots, providing ballot boxes, providing and equipping poll-ing places and all necessary expenses of the school district clerks in connection with school district elections not held in conjunction with state elections." Minn.Stat. § 204B.32, subd. 1(d) (2010). If "school district elections are held in conjunction with state elections, the school district shall pay the costs of printing the school district ballots, providing ballot boxes and all necessary expenses of the school district clerk." *Id.* Section 204B.32 also identifies categories of expenditures that may be allocated to school districts, including "postage for absentee ballots and applications; preparation of polling places; preparation and testing of electronic voting systems; ballot preparation; publication of election notices and sample ballots; transportation of ballots and election supplies; and compensation for administrative expenses of the county auditor, municipal clerk, or school district clerk." *Id.*, subd. 2 (2010). These expenditures are limited to those necessary to ensure that the voting procedure is valid and that voters can vote.

Relators argue that the school district's expenditures do not fall within any of the identified categories in section 204B.32. We agree. The expenditures at issue—newsletter publications promoting passage of a ballot question and postage for the dissemination of the newsletters—do not fall within the election-related expenses identified in section 204B.32. We conclude that the expenditures are not required by law within the meaning of section 211A.01, subdivision 6. Because the expenditures are not required by law, we must consider whether they are authorized by law.

Citing an opinion of the Minnesota Attorney General, No. 159b–11, issued September 17, 1957, respondents assert that the expenditures are authorized by law. Respondents argue that the attorney general opinion authorizes the expenditures. *See* Minn.Stat. § 8.07 (2010) (stating attor-

ney general opinions on school matters are decisive until court of competent jurisdiction decides otherwise). "While the attorney general's opinions are entitled to careful consideration at all times, they are not binding upon the courts." *Village of Blaine*, 272 Minn. at 353, 138 N.W.2d at 39. We consider the attorney general opinions to be instructive because the issue before us is one of first impression.

In Opinion No. 159b–11, the attorney general responded to the following question: "May the School District expend funds for printed literature, newspaper space and radio time to conduct an education program for such purposes?" The attorney general opined that a reasonable amount of school district funds could be expended to disseminate information to voters to inform them on the issue before them. The attorney general cited statutory authority that vests the care, management, and control of the business of an independent school district in the school board and noted that a school district "has general charge of the business of the district, the school houses, and of the interests of the schools." *See* Minn.Stat. §§ 123B.02, subd. 1, .09, subd. 1 (2010) (vesting care, management, and control of school district, school houses, and interests of schools in school board).

Citing an opinion of the Minnesota Attorney General, No. 159a–3, issued May 24, 1966, relators argue that the expenditures are unauthorized by law because the newsletter publications did not "inform" voters on the issue. Instead, they promoted one side of the ballot question—the passage of the ballot question—and are not authorized specifically by the legislature. In Opinion No. 159a–3, the attorney general responded to the following questions:

(1) In making oral presentations to citizens' groups concerning a forthcoming bond election may members of the School Board of an independent school district advocate the passage of a bond issue for the construction, modification, etc. of schools?

(2) During the 'campaign' involving the question of the issuance of bonds for the construction, modification, etc. of schools of an independent school district may school districts pay the mailing cost of literature printed at the expense of others, which literature urges in the name of the school board or otherwise the passage of the bond issue, so long as the expenses are reasonable?

(3) During the campaign involving the question of the issuance of bonds for the construction, modification, etc. of schools may an independent school district pay for the cost of the literature, as well as the mailing cost of literature which urges in the name of the School Board or otherwise the passage of the bond issue, so long as the expenses are reasonable?

Noting its earlier Opinion No. 159b–11, the attorney general opined that, even if the expenses are reasonable, a school district may not use public funds to print and mail literature that urges voters to pass a bond referendum. The attorney general predicted that Minnesota courts would decide the issues "in harmony" with caselaw from another jurisdiction, which had addressed the issue. *See Citizens to Protect Pub. Funds v. Bd. of Ed. of Parsippany–Troy Hills Twp.*, 13 N.J. 172, 98 A.2d 673, 677–78 (1953).

In *Citizens to Protect Public Funds*, a school board used public funds to print and distribute a booklet that presented facts about a proposed building program. *Id.* at 674. Three pages exhorted voters to "Vote Yes!" and warned of negative consequences for failing to vote yes. *Id.* The

New Jersey Supreme Court held that absent legislative authorization, public funds may not be used to advocate one side of a voter issue and that, therefore, a municipal corporation was prohibited from using public funds to advocate only one side of a controversial issue. *Id.* at 677. The court explained its reasoning as follows:

> We do not mean that the public body formulating the program is otherwise restrained from advocating and espousing its adoption by the voters. Indeed, as in the instant case, when the program represents the body's judgment of what is required in the effective discharge of its responsibility, it is not only the right but perhaps the duty of the body to endeavor to secure the assent of the voters thereto. The question we are considering is simply the extent to and manner in which the funds may with justice to the rights of dissenters be expended for espousal of the voters' approval of the body's judgment. Even this the body may do within fair limits. The reasonable expense, for example, of the conduct of a public forum at which all may appear and freely express their views pro and con would not be improper. The same may be said of reasonable expenses incurred for radio or television broadcasts taking the form of debates between proponents of the differing sides of the proposition. *It is the expenditure of public funds in support of one side only in a manner which gives the dissenters no opportunity to present their side which is outside the pale.*

*Id.* at 677–78 (emphasis added). In *Citizens,* the court concluded that the board advocated only "one side ... of [a] controversial question without affording the dissenters the opportunity by means of that financed medium to present their side." *Id.* at 677.

In another leading case, the California Supreme Court held that "in the absence of clear and explicit legislative authorization, a public agency may not expend public funds to promote a partisan position in an election campaign." *Stanson v. Mott,* 17 Cal.3d 206, 130 Cal.Rptr. 697, 551 P.2d 1, 3 (1976). In *Stanson,* the "director of the California Department of Parks and Recreation ... had authorized the department to expend more than $5,000 of public funds to promote the passage of [a] bond issue" for future acquisition of park land and recreational and historical facilities. *Id.,* 130 Cal.Rptr. 697, 551 P.2d at at 3. The court stated: "Although the department did possess statutory authority to disseminate 'information' to the public relating to the bond election, the department, in fulfilling this informational role, was obligated to provide a fair presentation of the relevant facts." *Id.*

Other jurisdictions that have addressed the issue have also disapproved of the use of public resources that do not fairly and impartially educate the electorate, but instead are intended to sway voters. *See Coffman v. Colo. Common Cause,* 102 P.3d 999, 1013 (Colo.2004) (holding that when public funds are used to inform public about ballot measure, information must present both sides of issue); *Palm Beach Cnty. v. Hudspeth,* 540 So.2d 147, 154 (Fla. Dist.Ct.App.1989) (stating county "should allocate tax dollars to educate the electorate on the purpose and essential ramifications of referendum items, [but] it must do so fairly and impartially"); *Smith v. Dorsey,* 599 So.2d 529, 542 (Miss.1992) (finding "compelling wisdom and sound logic" in cases recognizing a "balanced, informational role in educating the local community about referendum proposals"); *Phillips v. Maurer,* 67 N.Y.2d 672, 499 N.Y.S.2d 675, 490 N.E.2d 542, 543 (1986) (holding that advertisement urging voters to support budget and bond issue proposal impermis-

sibly exhorted the electorate to support the board's position); *Dollar v. Town of Cary,* 153 N.C.App. 309, 569 S.E.2d 731, 734 (2002) (affirming preliminary injunction because town's promotional, rather than informational, advertisements promoted certain council candidates).

■ In this case, based on their complaint, the ALJ determined that relators (1) alleged specific facts to support the claim that respondents disseminated publications and otherwise acted to promote passage of the ballot question and (2) alleged specific facts showing that the expenditures paid for the dissemination of one-sided information on a voter issue. We conclude that the school board lacked express legislative authority for the expenditures at issue and that the caselaw in other jurisdictions is persuasive. We therefore hold that, although a school district may expend a reasonable amount of funds for the purpose of educating the public about school-district needs and disseminating facts and data, a school district may not expend funds to promote the passage of a ballot question by presenting one-sided information on a voter issue. In this case, the school board's expenditures—public funds used to promote the passage of the ballot question by presenting one-sided information on a voter issue—were not authorized by law. We therefore conclude that the expenditures by the school district are election-related expenditures not required or authorized by law and not exempt from the definition of "disbursement" under chapter 211A. Because the expenditures are "disbursements," they are subject to campaign-finance reporting under section 211A.02. The ALJ erred in concluding that the expenditures are not "disbursements" and in concluding that relators failed to state a prima facie violation of chapter 211A's reporting requirements.

### III. Minnesota Statutes Section 211B.06 Claims

Minnesota Statutes section 211B.06 prohibits a person from intentionally participating in the preparation or dissemination of campaign material "with respect to the effect of a ballot question, that is designed or tends to ... promote or defeat a ballot question, that is false, and that the person knows is false or communicates to others with reckless disregard of whether it is false." Minn.Stat. § 211B.06, subd. 1. At the evidentiary hearing, the complainant bears the burden of proving a violation of section 211B.06 by clear-and-convincing evidence. Minn.Stat. §§ 211B.32, subd. 4, .35 (2010).

■ Section 211B.06 is directed at false statements of fact and not against unfavorable deductions or inferences based on fact, even if they "may be considered extreme and illogical." *Kennedy v. Voss,* 304 N.W.2d 299, 300 (Minn.1981). The burden of alleging facts sufficient to show falsity cannot be satisfied by alleging that the statement is not true in every detail; if a statement is true in substance, inaccuracies of expression or detail are immaterial. *Cf. Jadwin v. Minneapolis Star & Tribune Co.,* 390 N.W.2d 437, 441 (Minn.App.1986) (stating burden of proof concerning falsity of statement in libel action). Expressions of opinion are not actionable if "the audience would understand the statement is not a representation of fact." *Id.*

■ Because the plain language of section 211B.06 includes the definition of actual malice set forth in *Chafoulias v. Peterson,* 668 N.W.2d 642, 654–55 (Minn.2003), that definition applies to a complaint filed in the OAH alleging a violation of section 211B.06. *Riley v. Jankowski,* 713 N.W.2d 379, 399 (Minn.App.2006), *review denied* (Minn. July 19, 2006). "Actual malice is a term of art; it means that the [person]

acted with knowledge that the publication was false or with reckless disregard of whether it was false or not." *Chafoulias,* 668 N.W.2d at 654 (quotation omitted). Reckless disregard for the truth is a subjective standard, requiring that the person made a statement "while subjectively believing that the statement is probably false." *Id.* at 655.

The ALJ concluded that relators failed to allege a prima facie violation of section 211B.06. Relators identify four statements from their compliant that they allege are false statements that violate Minn.Stat. § 211B.06, but only challenge the ALJ's conclusions concerning three of the statements.[1]

### A. Statement Number One

■■■ Relators allege that the following statement is false:

> If residents vote no, their taxes will most likely still increase—in some cases, by a large amount. That's because if the plan is not approved, the school district would enter into "statutory operating debt" by June 2011, which means the State of Minnesota recognizes that the school district can no longer balance its expenditures and revenues, and would need to dissolve. Children in this school district would then go to neighboring school districts.

Specifically, relators allege that the phrase "would need to dissolve" is false because entering into statutory operating debt does not require that a district dissolve. According to the complaint, "Over the past 30 years, dozens of Minnesota school districts have entered a state of statutory operating debt. None have opted for dissolution or

were otherwise required to dissolve by another authority."

Respondents argue that the claim concerning statement number one is untimely because the statement was made more than one year prior to the date that relators filed their complaint. *See* Minn.Stat. § 211B.32, subd. 2 (2010) (stating complaint must be filed within one year after occurrence of act that is subject of complaint). But respondents did not make this argument to the ALJ; the ALJ did not address whether a claim concerning statement number one was time barred; and we cannot discern from the record whether the ALJ addressed the timing of the filing of the complaint. We therefore do not reach respondents' argument based on untimeliness.

The ALJ found that statement number one is not demonstrably false because it "reflects an inference and the phrase 'would need' is at most a pessimistic possibility in a conditional sentence." Relators argue that the statement is definitive because "would" is the past tense of "will." We agree. *See American Heritage Dictionary, supra,* at 1984 (defining "would" as the "[p]ast tense of will"). The statement would lead an ordinary reader to the definitive conclusion that if the bond referendum did not pass, the school district would be forced to dissolve and children in the district would be forced to attend school in other districts. *Cf. Jadwin,* 390 N.W.2d at 442 (giving words of alleged libel their "obvious and natural meaning").

With respect to the subjective component required by section 211B.06, relators allege that, "School District officials were aware that entering into statutory operating debt does not require a district to

---

1. In their complaint, relators identify seven statements and number them one through seven. In their appellate brief, they explain that in the complaint they only allege that

statements numbered one through four are false. For purposes of our analysis, we refer to the statements at issue by the numbers attributed to the statements in the complaint.

dissolve." The ALJ concluded that "there is nothing in the record to show [statement number one] was disseminated with a high degree of awareness of its probable falsity." We disagree. Statement number one states that if the ballot question did not pass, "the school district would enter into statutory operating debt," and that the district "would need to dissolve." Relators allege that school district officials "were aware that entering into statutory operating debt does not require a district to dissolve." Because relators allege facts that, if true, would be sufficient to show that statement number one is false and that school district officials made the statement with awareness that it was false, the ALJ erred by concluding that relators did not allege a prima facie violation of section 211B.06.

### B. Statement Number Three

■■■ Relators allege that the statement, "Projected annual deficit in 2011–12: $4.1 million" is false. According to the complaint, this projection was presented in public presentations by the school superintendent and in district publications. Relators allege that the projection is false because in June 2009, prior to the public statements of the projection, the school board approved a 2009–10 budget with a total shortfall of $833,000. Relators allege that the "projection reflected 'worst case' assumptions" and is not realistic because it "assumed that no teacher layoffs or staff reductions would occur, no steps would be taken to curb rising health insurance costs, and that energy costs would rise by ten percent annually from record highs in 2008."

The ALJ concluded that stating that the projection was "gloomy, unrealistic or improbable, is not to say that it was demonstrably false." Relators argue that they demonstrated that the statement is false

because they showed that "before the [d]istrict promoted the passage of the ballot question using a $4.1 million deficit for 2011–12, the deficits were not growing, but decreasing." We agree. Evidence in the record shows that the 2009–10 adopted budget's shortfall was less than the shortfall in the 2008–09 adopted budget. Relators allege that, "School District officials knew that they no longer reflected their actual financial situation. In a subsequent media interview, for instance, School District Business Manager Kimberly Johnson was quoted acknowledging that the budget projections were not realistic, but were intended to dramatize that the district faced financial challenges." The ALJ concluded that, "nothing in the record shows" that statement number three was "circulated with some awareness of . . . falsity." We disagree. The record contains relators' allegations that school district officials knew that the budget projection made in statement number three did not reflect their actual financial situation and that one official publicly acknowledged that "budget projections were not realistic."

Because relators allege facts, that if true, would be sufficient to prove that statement number three is demonstrably false and that school district officials either knew that the statement was false or recklessly disregarded whether the statement was false, the ALJ erred by concluding that relators failed to allege a prima facie violation of section 211B.06.

### C. Statement Number Four

■■■ Relators allege that the following statement is false: "The plan now up for a December 8 public vote was developed to not only save millions of dollars and ensure the district's continued operation, its implementation will provide many new oppor-

tunities for our young people's education."[2] Relators allege that in this statement the school district made specific promises for educational improvement that it cannot assure because the monies from the capital bonding funds cannot be utilized for many of the educational improvements the district claims will result from the passage of the ballot question. In the complaint, relators acknowledge that school officials stated that "operational savings made possible by the school consolidation would free up funding," but allege that school officials failed to explain that the "educational improvements were contingent on the realization of ... highly speculative savings and revenue increases." Relators assert that the statement is false because the district "can in no way assure the promises made," but do not provide evidence or allege specific facts to support this assertion.

In concluding that relators did not show that this statement was demonstrably false, the ALJ found that the school district's "claims of educational improvements that will result from the passage of the ballot question may be unrealistic or speculative, but that does not make them factually false." The ALJ concluded that the district's "alleged failure to explain the speculative nature of the operational savings does not provide [a] basis for a complaint under Minn.Stat. § 211B.06." We agree. The ALJ properly concluded that showing that the educational opportunities are speculative, or even unrealistic, does not show that the statement is demonstrably false and that relators' allegations concerning statement number four are insufficient to show a violation of section 211B.06.

## DECISION

The school district, school board, and board members are subject to campaign-finance reporting because they fall within the definition of "committee" in chapter 211A. The school district's expenditures of public funds to promote the passage of the ballot question were not authorized by law. The school district's expenditures are not election-related expenditures required or authorized by law; they are not exempt from the definition of "disbursements" under chapter 211A.

Because the school district, school board, and board members fall within the meaning of "committee" in chapter 211A, because the school district's expenditures are "disbursements" under chapter 211A, and because relators alleged a prima facie violation of section 211B.06 with respect to statements number one and three in their complaint, the ALJ erred by dismissing relators' complaint. Because relators failed to allege a prima facie violation of section 211B.06 concerning statement number four, we affirm in part, reverse in part, and remand.

**Affirmed in part, reversed in part, and remanded.**

---

**2.** The educational opportunities are listed after the allegedly false statement under the following headings: "Better learning spaces and materials," "Learning centered on individual students," "Focus on life skills," "Expanded elementary level programming," "Solid core programming," and "Enhanced potential for electives."