*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1024**

Steven Abrahamson, et al.,
Relators,

vs.

The St. Louis County School District,
Independent School District No. 2142, et al.,
Respondents,

Office of Administrative Hearings,
Respondent.

**Filed April 4, 2016
Affirmed
Ross, Judge**

Office of Administrative Hearings
File No. OAH 60-0325-32071

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for relators)

John M. Colosimo, Bonnie A. Thayer, Colosimo, Patchin & Kearney, Ltd., Virginia, Minnesota (for respondents St. Louis County School District, Independent School District No. 2142)

Lori Swanson, Attorney General, St. Paul, Minnesota (for respondent Office of Administrative Hearings)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

The present appeal arises from the second formal complaint filed by two constituents in the St. Louis County School District who have accused the school district of violating campaign-finance reporting laws. After the first appeal, the school district filed a campaign-finance report of its 2009 expenditures used to promote one side of a ballot question. The relators complained to the office of administrative hearings, accusing the district of improperly omitting certain contributions given to the district and expenditures made by the district. Relators now appeal the decision of an administrative-law-judge panel, which rejected their contention that the district was obligated to list as an in-kind contribution a discount in the cost of a subcontractor's campaign-related services that the subcontractor provided to the district's contractor. Although the parties join in urging this court to decide an issue outside the jurisdiction of the administrative-law panel's decision (whether a school district violates the law by spending public funds to promote a ballot question) we hold that the issue is not within the proper scope of our certiorari review of the panel's decision. And we affirm the panel's decision that the school district is not bound by law to report the allegedly in-kind contribution.

## FACTS

Relators Steven Abrahamson and Tim Kotzian are residents within the St. Louis County School District who have accused the school district of violating campaign-finance reporting laws. Their accusation arises from the district's involvement in a ballot referendum question in December 2009, which asked whether voters would authorize the

2

school district to issue school building bonds of nearly $80 million. The school district paid Johnson Controls Inc. $58,000 for what it called "communications" services related to the referendum. These services include "polling and referendum planning," "information preparation and dissemination," "public and media outreach plans," "distribution of communication materials," and "strategic communications advice." The ballot measure succeeded, and Abrahamson and Kotzian filed their first complaint with the Minnesota Office of Administrative Hearings (OAH) accusing the school district and seven of its board members of violating campaign-finance reporting requirements. The complaint alleged that the school district had employed Johnson Controls and its subcontractors to promote the ballot question and that the school district violated the campaign-finance reporting requirements of Minnesota Statutes chapter 211A by failing to report the district's expenditures incurred in the promotion.

An administrative-law judge dismissed the relators' complaint on the theory that the school district was not subject to reporting requirements because it did not qualify as a "committee" under the reporting statute as defined in Minnesota Statutes section 211A.01, subdivision 4 (2014). The judge held alternatively that the school district's expenditures were also not "disbursements" under the statute because they were excluded from the statutory definition as "election-related expenditures required or authorized by law." Minn. Stat. § 211A.01, subd. 6 (2014). Relators appealed, and this court reversed, holding that a school district did qualify as a "committee" and was therefore subject to the reporting requirements. *Abrahamson v. St. Louis Cty. Sch. Dist.*, 802 N.W.2d 393, 406 (Minn. App. 2011), *aff'd in part rev'd in part*, 819 N.W.2d 129 (Minn. 2012). We also reversed the

judge's alternative holding that the expenditures were not "disbursements." *Id.* We held that "a school district may not expend funds to promote the passage of a ballot question by presenting one-sided information on a voter issue" and that the funds the district expended to promote the ballot question were not authorized by law. *Id.* at 403.

The supreme court affirmed this court's decision that the school district constituted a "committee" under chapter 211A. *Abrahamson v. St. Louis Cty. Sch. Dist.*, 819 N.W.2d 129, 135 (Minn. 2012). It remanded the case to the OAH to determine whether the school district had promoted the referendum's passage and whether the costs of the promotion were "disbursements" under the statute. *Id*. at 131.

A panel of administrative-law judges found that the school district had promoted the referendum's passage and that the promotional costs were "disbursements." The panel concluded that the school district must file a campaign-finance report, and it reprimanded the district for failing to comply with the reporting requirements.

The school district's business manager, Kimberly Johnson, was responsible for complying with the panel's order to submit the campaign-finance report. Johnson consulted with the school district's attorneys and contacted the contractor Johnson Controls to determine the amount of expenditures spent to promote the referendum. Johnson Controls delivered the invoices of one of its subcontractors on the project—Greenfield Communications. The school district did not obtain any invoices from the other subcontractors, but Johnson Controls told Johnson that, except for the Greenfield expenses, at most eight percent of the $58,000 communication budget went toward promoting the referendum.

Johnson prepared a report based on that information, indicating that Johnson Controls and its subcontractors expended $11,142.58 to promote the referendum. She later amended the report to include other costs, totaling $12,561.72. Her report included no contributions made to the district for the campaign promotion.

The report did not satisfy the relators. They filed a second complaint with the OAH in December 2014, accusing the school district, its superintendent, its seven board members, and Kimberly Johnson, of violating Minnesota Statutes section 211A.02, subdivisions 1, 4, and 5 (2014). They alleged that the campaign-finance report was incomplete by failing to include as expenditures the entire $58,000 the district paid to Johnson Controls and failing to include as an in-kind contribution the amount that Greenfield had discounted its bill to Johnson Controls after Greenfield's actual costs exceeded the amount it had quoted.

A second three-judge administrative panel conducted a hearing in February 2015. During the hearing, the relators raised an issue they had not included in their complaint, which is whether a school district violates the law by expending funds to promote a ballot question. The panel held that the school district was not required to report the entire $58,000, but it found that the district failed to report the cost of polling services and the cost of a report completed by one of the Johnson Controls subcontractors. It also found that the district should have reported the total amount listed on the Greenfield invoices. But it rejected the relators' contention that the district was required to report as an in-kind contribution the amount of the over-budget discount Greenfield gave Johnson Controls. And the panel declined to entertain the relators' argument that, aside from the district's

5

reporting requirements, the school district cannot, as a matter of law, promote a ballot question. The panel ordered the school district to pay a $200 fine and file an amended campaign-finance report to remedy its reporting deficiencies.

The relators have again appealed to this court by writ of certiorari.

## DECISION

The relators' statement of the case identified only the issue of whether it is illegal for a school district to use public funds to promote one side of a ballot question. This court questioned whether the issue falls within our scope of review. Relators responded by declaring that they also intended to raise the issue of the alleged in-kind contribution to the school district allegedly made indirectly by Greenfield's price discount to Johnson Controls. In a special-term order, this court held that relators' challenge to the panel's decision regarding in-kind contribution is within the scope of our appellate review. But the order deferred to this panel whether to review the issue of the legality of the district's use of public funds to advocate for one side of a ballot question.

## I

We first clarify the limits of our review. The latest administrative panel found that the issue of whether a school district may expend public funds to promote one side of a ballot measure was beyond the scope of the administrative hearing and fell instead "within the exclusive province of the judicial branch." The panel is correct, because an administrative agency needs statutory jurisdiction before it decides a question. *McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). And Minnesota Statutes section 211B.35, subdivision 2 (2014), limits the panel's jurisdiction to

6

determining whether the alleged violations of chapter 211A occurred and then to resolving the violation. The supreme court has also specifically held that whether a school district may use public funds to promote a ballot question is outside the reach of chapter 211A, because the chapter "does not *authorize* (or prohibit) promotional expenditures; it simply imposes reporting obligations." *Abrahamson*, 819 N.W.2d at 135.

Relators acknowledge that the administrative-law panel lacked jurisdiction to decide the legal question of whether a school district may expend public funds to promote one side of a ballot measure, but they maintain that this court should nevertheless decide it. At oral argument, the school district joined the realtors in urging this court to reach the legal issue. We decline to do so.

The appeal comes to us by writ of certiorari, which is "a vehicle for the review and correction of decisions and determinations already made." *In re On-Sale Liquor License, Class B*, 763 N.W.2d 359, 371 (Minn. App. 2009). A party aggrieved by a final decision on an OAH complaint may obtain this court's review of the OAH decision. Minn. Stat. § 211B.36, subd. 5 (2014). Our review of the OAH decision is limited by Minnesota Statutes section 14.69 (2014) to affirming the decision, remanding the case for further proceedings, or reversing or modifying the decision. We may reverse or modify the decision only if it violates a constitutional provision, exceeds its jurisdiction, arises from an unlawful procedure, embodies an error of law, is unsupported by substantial evidence, or is arbitrary or capricious. Minn. Stat. § 14.69. Because the hearing panel undisputedly concluded that it lacked jurisdiction to decide whether a school district can lawfully fund a ballot measure, the panel rendered no decision on that issue for this court to review under

7

section 14.69. The issue therefore falls outside the scope of our proper review. *See Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.*, 783 N.W.2d 733, 743–44 (Minn. App. 2010) ("[M]atters outside the scope of review are not properly considered by appellate courts."), *review denied* (Minn. Sept. 21, 2010). Although the relators suggest that we should make an exception and consider the issue in the interest of justice under rule 103.04 of the Minnesota Rules of Civil Appellate Procedure, none of the relators' bases for the suggestion are persuasive or warrant further discussion. We therefore turn to whether the administrative panel erred under section 14.69.

## II

Relators argue that the school district should have reported as in-kind contributions the discount that Greenfield afforded Johnson Controls to offset the costs that exceeded Greenfield's cost projections. We believe that the administrative panel properly rejected the relators' position.

The panel reasoned that, because the school district had contracted for a flat fee of $58,000 with Johnson Controls for "polling, planning, information preparation and dissemination, public and media outreach plans, communication materials, and strategic advice," any benefit of a cost-overrun discount from Greenfield to Johnson Controls was, at most, a benefit to Johnson Controls, not an in-kind contribution to the school district. Relators assert that this is error, pointing to the statutory definition of "contribution" and maintaining that the panel's interpretation would form a loophole in the state's campaign-finance reporting system. They insist that a contribution depends on the fair market price

of those services that benefited the campaign regardless of whether the cost savings went to Johnson Controls or the school district.

Whether the Greenfield discount constitutes an in-kind contribution is a question of statutory construction, which we review de novo. *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn. 2007). The operative statute defines "contribution" in part as "anything of monetary value that is *given or loaned to a candidate or committee* for a political purpose." Minn. Stat. § 211A.01, subd. 5 (2014) (emphasis added). The relators are correct that the $4,062.50 in discounted services is something of "monetary value." But they identify no evidence that any of that amount was "given or loaned to" the school district—the entity that constitutes the "committee" in this case. The school district paid a flat fee of $58,000 to Johnson Controls for the contracted campaign-related services, all of which it received and some of which was performed by Greenfield.

Relators argue that a substantial loophole in reporting requirements will exist if obligated reporters need not report discounted services. The argument is not implausible in other circumstances. An entity could, for example, attempt to circumvent its reporting obligation by entering into a fee-based contract for valuable campaign services with a service provider who is a supporter of the entity's campaign position and who substantially undercharges the entity in order to benefit the campaign. We need not address whether that sort of strategic arrangement might open the entity to a reporting requirement under the statute because the relators in this case point us to no finding by the panel and no evidence presented by the school district tending to suggest that Greenfield engaged in that type of

activity here or that its services actually provided exceeded the quality or quantity of the services that the school district bargained for at the contracted cost.

The relators appear to argue that the benefit of the discount should be attributed to the school district through principles of agency even though it appears the district received no real benefit from the discount, which benefited Johnson Controls, if anyone. It does appear that Johnson Controls was indeed "given" something of value, since its flat-rate contract with the school district would have required Johnson Controls to absorb the costs of Greenfield's overbudgeted services had Greenfield not itself eaten them. But even if we conclude that Johnson Controls was "given" some benefit by the Greenfield discount, nothing in the record indicates that the school district executed the level of control or supervision over Johnson Controls so as to initiate a principal–agent relationship. *See Jurek v. Thompson*, 308 Minn. 191, 199 n.5, 241 N.W.2d 788, 792 n.5 (1976) (stating that the parties in a principal–agent relationship "are in a fiduciary relationship and the principal retains some right of control"). Agency law does not support the relators' argument.

We conclude that none of the relators' arguments exposes any reversible error. We therefore affirm the administrative-law-judge panel's decision.

**Affirmed.**