Casey Catherine PETERSON,
Appellant,

v.

WILSON TOWNSHIP, Respondent,

v.

Mutual Service Casualty Insurance
Company, Respondent.

No. CX–02–600.

Supreme Court of Minnesota.

Dec. 24, 2003.

Charles A. Bird, Bird & Jacobsen, Rochester, MN, for Appellant.

Richard J. Kruger, Moore, Warner, & Kruger, St. Paul, MN, for Respondent Mutual Service Casualty Ins. Co.'s.

Steven M. Pederson, Pelughoeft, Pederson, & Johnsrud, Winona, MN, for Respondent Wilson Township's Attorney.

## OPINION

BLATZ, Chief Justice.

Casey Catherine Peterson, the appellant and judgment creditor, brought this garnishment action to force Mutual Service Casualty Insurance Company, the respondent and garnishee, to indemnify its insured, Wilson Township, the respondent and judgment debtor. The court of appeals held that subsequent garnishment actions against a garnishee are impermissible after the garnishee has been discharged under Minn.Stat. § 571.79(b) (1998). We reverse.

On June 23, 1996, Lance Henderson was sold and served a number of alcoholic beverages while attending Wilson Daze, an annual festival held by the Wilson Township Volunteer Fire Department. While intoxicated, Henderson left the festival in an automobile and collided with a vehicle driven by Peterson. Because Henderson was intoxicated and had purchased beer from Wilson Township, Peterson sued Wilson Township under the Minnesota Dram Shop Act, Minn.Stat. § 340A.801 (2002).

Peterson's action implicated two insurance policies. The first policy, obtained by Wilson Township, was a commercial policy issued by Mutual Casualty Service Insurance Company (MSI). The second policy, obtained by Wilson Township's fire department, was a liquor liability risk plan issued by Minnesota Joint Underwriting Association (MJUA). While MJUA accepted coverage and provided legal defense for Wilson Township, MSI disputed coverage under its policy's liquor liability exclusion clause. The clause excluded coverage for injuries caused while the insured was "in the business" of furnishing alcoholic beverages. To resolve the coverage issue, MSI initiated a declaratory judgment action. The district court denied MSI relief on the basis that the liquor liability exclusion in MSI's policy did not apply because Wilson Township was not in the business of furnishing alcoholic beverages when it sold beer to Henderson. *Mut. Ser. Cas. Ins. Co. v. Wilson Township*, 603 N.W.2d 151 (Minn.App.1999), *rev. denied* (Minn. Mar. 14, 2000).

While the declaratory judgment action was pending, Peterson and Wilson Township entered into a *Miller–Shugart* settlement.[1] In the *Miller–Shugart* settlement, Peterson and Wilson Township stipulated that the reasonable value of Peterson's claims amounted to $265,000. MJUA provided legal defense and agreed to pay its entire bodily injury limit of $100,000 to settle the claims brought against Wilson Township. Of that, MJUA paid $72,500 to Peterson.[2] In terms which typify a *Miller–Shugart* settlement, Peterson and Wil-

---

1. In a *Miller–Shugart* settlement, the insurer has denied all coverage, and the abandoned insured, left on its own, agrees with the plaintiffs that judgment may be entered against it in return for the plaintiffs releasing the insured from any personal liability. *Buysse v. Baumann–Furrie & Co.*, 481 N.W.2d 27, 29 (Minn.1992).

2. MJUA's policy limits were $50,000 per person and $100,000 per occurrence. It paid $72,500 to Peterson and $27,500 to the other passenger in the car. Therefore, MJUA exceeded its per person limit with respect to Peterson, but stayed within its occurrence limit.

son Township agreed that the remaining $192,500 would come solely from proceeds of the MSI insurance policy and from no other assets of Wilson Township. Although given notice of settlement negotiations, MSI refused to participate, defend, or provide funds to settle Peterson's claims against its insured, Wilson Township. Pursuant to the settlement, on April 20, 2000, the court entered judgment in favor of Peterson against Wilson Township in the sum of $192,500.

The next day, Peterson served a garnishment summons upon MSI. In MSI's response dated May 12, 2000, a garnishment nonearnings disclosure statement (disclosure statement), MSI admitted existence of coverage and agreed to pay $15,305.47 for attorney fees and expenses incurred by Wilson Township, but disputed the amount owed to Peterson under the settlement—$192,500. MSI claimed the settlement was invalid and unenforceable because MJUA had failed to drive a "hard bargain" and "colluded" with Peterson to deflect liability onto MSI.[3]

To proceed against MSI directly, Peterson filed a motion for leave to file a supplemental complaint. Under Minn.Stat. § 571.80(a) (1998), Peterson had 20 days to file a motion for leave to file a supplemental complaint from the date that MSI served its disclosure statement. Instead, Peterson waited 48 days to file her motion. Despite finding probable cause that the garnishee would be liable for the judgment debt, the district court denied Peterson's

motion for leave to file a supplemental complaint because the motion was untimely. The court further ruled that due to the untimely motion, the garnishee, MSI, was discharged from its duty to the judgment creditor, Peterson.

On November 22, 2000, Peterson served a second garnishment summons on MSI. In MSI's response, the second disclosure statement, MSI asserted it was discharged from all future garnishments by Peterson based on the district court's initial denial of Peterson's first motion for leave to file a supplemental complaint. Further, MSI went on to admit coverage, but again disputed the amount owed to Peterson under the *Miller–Shugart* settlement.[4]

On December 12, 2000, Peterson served the third garnishment summons upon MSI. In its disclosure statement, MSI once again admitted coverage, noting the district court's discharge of MSI at the conclusion of the first garnishment proceeding. In response, Peterson filed a motion for leave to file a supplemental complaint seeking to enforce the *Miller–Shugart* settlement against MSI. Peterson also moved for relief under Minn. R. Civ. P. 60.02 on the grounds of excusable neglect and fraud.

The district court granted Peterson's third motion for leave to file a supplemental complaint, ruling that although MSI had been discharged from the first garnishment summons, nothing prevented Peterson from serving subsequent garnish-

---

3. In alleging collusion, MSI argues that it was not collusive in an ethical sense, but that it was collusive in a legal sense. By this, MSI states that it was collusive because "the insured, Wilson Township, and its dramshop [sic] insurer negotiated it, at a time when Wilson Township was adequately defended by its dramshop [sic] carrier."

Further, MSI has argued that the *Miller–Shugart* settlement was unenforceable because it was unreasonable. That, in fact, is a

legal basis to set aside a *Miller–Shugart* settlement, but MSI did not seek cross-review of this issue in its response to Peterson's Petition for Further Review. Therefore the court deems the issue waived.

4. Based on the record before us, it is unclear whether Peterson filed a motion for leave to file a supplemental complaint in response to MSI's second disclosure statement.

ment summonses. The court based its decision to grant the motion on amendments made to the garnishment statute that became effective in August 2000—before Peterson's third garnishment summons was served, but after the district court's previous ruling based on the 1998 version of the same statute. The 2000 amendments specifically limited the effect of a "discharge" under Minn.Stat. § 571.79 to "any further retention obligation" with respect to "a specific garnishment summons." Minn.Stat. § 571.79 (2000). Although it was not necessary to reach the issue, the court denied the Rule 60.02 motion, finding that the need for finality trumped the need for re-adjudication.

Pursuant to the district court's order, Peterson served a supplemental complaint on MSI. In its answer, MSI argued that the discharge from the first garnishment action had a preclusive effect on subsequent garnishment attempts. Also, MSI maintained, as it had in previous disclosure statements, that the purported *Miller–Shugart* settlement was invalid and unenforceable as a matter of law. Peterson then moved for summary judgment. On January 10, 2002, the court granted summary judgment in favor of Peterson for $192,500. The court did not reconsider the discharge issue or the Rule 60.02 motion, which were addressed in its May 7, 2001 order that granted leave to file a supplemental complaint. In refusing reconsideration of the discharge issue, the court stated that there was "no reason to find that circumstances have changed from the time of that ruling as to compel a different result at this time." *Peterson v. Wilson Township*, No. C4–00–562 at 5 (Jan. 10, 2002). MSI appealed to the court of appeals.

In a 2–1 decision, the court of appeals affirmed in part and reversed in part. The court of appeals held that the district court erroneously relied upon the 2000 amendments to the garnishment statute to allow Peterson to serve a supplemental complaint. Analyzing the issue of discharge under the 1998 statute, the court of appeals went on to hold that because Peterson failed to challenge MSI's first disclosure statement in a timely manner she "lost her right to the insurance proceeds from MSI." The court of appeals affirmed part of the district court's order that denied relief under Rule 60.02 for excusable neglect. Further, the court of appeals rejected Peterson's request for supplemental relief under Minn.Stat. § 555.08 (2000). This appeal followed.

■ We are asked to answer whether an untimely motion for leave to file a supplemental complaint permanently discharges the garnishee from all future garnishment actions brought by the creditor. To answer this question we must interpret the Minnesota garnishment statute's discharge provision. A lower court's interpretation of a statute is reviewed de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). We are guided in our interpretation by the statutory presumptions that the legislature did not intend an absurd or unreasonable result and intended that the entire garnishment statute be given effect. Minn. Stat. § 645.17(1) and (2) (2000). This requires us to consider the nature and purpose of the garnishment remedy and to look at the garnishment statutory framework as a whole.

■ The garnishment statutes serve to aid in collection of a judgment by providing means for a judgment creditor to reach property of a judgment debtor in the hands of a third party, the garnishee. *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 870 (Minn.1989). A creditor initiates the garnishment process by service of a garnishment summons upon a

garnishee. Minn.Stat. § 571.72, subd. 2 (1998). The garnishee must respond to the summons within 20 days with a written disclosure statement indicating whether the garnishee holds any property in which the judgment debtor has an interest. Minn.Stat. §§ 571.75, subd. 1, 571.78 (1998). A creditor may challenge the disclosure statement by filing a motion for leave to file a supplemental complaint against the garnishee. Minn.Stat. §§ 571.80(b), 571.75, subd. 4 (1998).

Relevant to the issue raised here, the 1998 garnishment statute, applicable at the time the first garnishment summons was served, provides circumstances under which disclosure may result in discharge of the garnishee. Minn.Stat. § 571.79 (1998). The section begins:

> Subject to sections 571.78 and 571.80, the garnishee, after disclosure, shall be discharged of any further obligation to the creditor when one of the following conditions are met:
>
> *  *  *  *  *  *
>
> (b) The garnishee discloses that the garnishee is indebted to the debtor as indicated on the garnishment disclosure form. The disclosure is conclusive against the creditor and discharges the garnishee from any further obligation to the creditor other than to retain all non-exempt disposable earnings, indebtedness, money, and property of the debtor that was disclosed.
>
> *  *  *  *  *  *

*Id.*

Section 571.78, referenced above, lists the duties of the garnishee. Garnishees shall (1) complete the garnishment disclosure form and return it to the creditor; (2) retain non-exempt property belonging to the debtor up to 110 percent of the amount claimed in the garnishment summons; and (3) remit and deliver the property to the creditor upon court order or return the property to the debtor when the garnishment retention period expires. Minn.Stat. § 571.78 (1998).

Section 571.80, also referenced in section 571.79, provides exceptions to discharge of a garnishee. As set forth in that section, a garnishee is not discharged if (1) within 20 days of the service of the garnishee's disclosure, an interested person serves a motion relating to the garnishment; or (2) the creditor moves the court for leave to file a supplemental complaint, as provided by section 571.75, subd. 4. Minn.Stat. § 571.80 (1998).[5]

Here, the garnishee, MSI, was discharged from the initial garnishment action. However, despite the first discharge and upon a subsequent motion, the district court allowed the creditor, Peterson, to proceed against MSI in a subsequent garnishment action. In its decision to grant Peterson leave to file a supplemental complaint against MSI, the district court relied on amendments to section 571.79 made effective August 1, 2000. The amendments included new language, which clearly indicated that a discharge related to a *retention* obligation did not bar a subsequent garnishment summons. Specifically, the amended statute reads as follows:

> Except as provided in paragraph (h), the garnishee, after disclosure, shall be discharged of any further retention obligation to the creditor with respect to a specific garnishment summons when one of the following conditions are met:
>
> *  *  *  *  *  *

granting the creditor leave to file a supplemental complaint against the garnishee. If probable cause is shown, the motion shall be granted.

(b) The garnishee discloses that the garnishee is indebted to the debtor as indicated on the garnishment disclosure form. The disclosure is conclusive against the creditor and discharges the garnishee from any further obligation to the creditor other than to retain all nonexempt disposable earnings, indebtedness, money, and property of the debtor that was disclosed.

\*     \*     \*     \*     \*     \*

(g) The discharge of the garnishee pursuant to paragraph (a), (b), (c), or (d) is not determinative of the rights of the creditor, debtor, or garnishee with respect to any other garnishment summons, even another garnishment summons involving the same parties, unless and to the extent adjudicated pursuant to the procedures described in paragraph (h).

(h) The garnishee is not discharged if within 20 days of the service of the garnishee's disclosure or the return to the debtor of any disposable earnings, indebtedness money, or other property of the debtor, whichever is later, an interested person (1) serves a motion scheduled to be heard within 30 days of the service of the motion relating to the garnishment, or (2) serves a motion scheduled to be heard within 30 days of the service of the motion for leave to file a supplemental complaint against the garnishee, as provided under section 571.75, subdivision 4, and the court upon proper showing vacates the discharge of the garnishee.

Minn.Stat. § 571.79 (2000).

In its order granting Peterson leave to file a supplemental complaint, the district court analyzed the amended section 571.79 and stated, "[A] discharge pursuant to one garnishment proceeding is determinative with respect to another proceeding only if: (1) the discharge was adjudicated in the earlier proceeding, (2) it was adjudicated pursuant to the procedures in paragraph (h), and (3) the new garnishment proceeding requires that any issue already adjudicated be re-adjudicated." The district court found that neither the second nor the third prong had been met.

On appeal, the court of appeals held the district court's reliance on the 2000 amendments was erroneous. Deciding the case under the 1998 version of the garnishment statute, the court of appeals held that the 1998 statute did not allow for multiple garnishment actions against a garnishee. In agreement with the court of appeals, MSI contends that the second garnishment action is impermissible under the 1998 garnishment statute and argues that discharge permanently relieves it of any obligation it may have to Peterson. In other words, MSI argues that once Peterson exhausted the 20–day window in which to serve a motion for leave to file a supplemental complaint, MSI's duties to retain, remit, or return property were forever discharged. In so arguing, MSI emphasizes the need for finality in order for insurers to efficiently distribute assets according to risk as well as the need for garnishees to be protected as neutral and unwilling litigants.

In contrast, Peterson argues that the "discharge of obligation" statutory language set forth in section 571.79 relieves the garnishee of any further obligation with respect to the current garnishment action, but does not grant the garnishee immunity from subsequent garnishment actions. Peterson also emphasizes that a garnishment discharge relieves an insurer-garnishee of its retention obligation under the garnishment summons—not its duty of indemnification under the insurance policy.

■ Thus, as framed by the parties, we must determine what the statutory lan-

guage means when it provides that upon discharge the garnishee is relieved of "any further obligation to the creditor." Minn. Stat. § 571.79 (1998). This statutory construction demands interpretation of the term "obligation."

We begin our analysis with the 1998 garnishment statute and focus first on the plain language of section 571.78, which enumerates the "duties or obligations" of the garnishee. Section 571.78 creates three distinct obligations for the garnishee upon receipt of a garnishment summons: (1) to complete a garnishment disclosure form; (2) to retain any property of the debtor; and (3) to remit the garnished property to the creditor or return the garnished property to the debtor when the retention period expires. This section is the sole source of the obligations imposed on the garnishee to the judgment creditor by the garnishment statute. No other section lists obligations that run from the garnishee to the creditor. Thus, the plain language of the statute supports the interpretation that the garnishment statute's discharge provisions discharge the garnishee from the obligations imposed by section 571.78 and nothing more. Such an interpretation would not preclude successive garnishments.

We next consider whether this narrow interpretation of "obligation" is consistent with the nature and purpose of the garnishment remedy. We ask whether it is reasonable to infer from the garnishment statute a legislative intent to alter or effect the underlying obligations that are being enforced by garnishment but arose independent of garnishment.[6] If, as we have said, the purpose of the garnishment statute is to aid in the collection of a judgment, that purpose implies an intent to support, not defeat, the underlying obligation reflected in the judgment.

█ Viewed in the context of the nature and purpose of the garnishment statute, the word "obligation" can only be reasonably interpreted to refer narrowly to the limited obligations that arose under the garnishment statute: the duties to 1) disclose; 2) retain non-exempt property belonging to the debtor; and 3) either remit the retained property to the creditor upon levy or order within the retention period or to return the property to the debtor when the retention period expires. The discharge of these statutory obligations does not affect the debtor's underlying obligation to the creditor or the garnishee's underlying obligation to the debtor and thus it does not preclude successive garnishment proceedings by the creditor, whose judgment remains unsatisfied. Accordingly, we conclude that creditors are allowed to file multiple garnishment summonses against the same garnishee.

The facts of this case demonstrate the potential for unreasonable results, were the garnishment statute to be interpreted to disallow multiple garnishment actions. First, the district court has determined that Wilson Township and Peterson entered into a reasonable and valid *Miller–Shugart* agreement. The settlement created a debtor-creditor relationship between Wilson Township and Peterson that is entirely independent of the garnishment process. MSI's discharge from the first garnishment action does not defeat Wilson Township's debt to Peterson. Second, under Wilson Township's insurance policy, MSI bore the duty to indemnify Wilson Township for debts such as that which it owed to Peterson. Although MSI disputed

---

**6.** The obligation of Wilson Township to Peterson arose under tort law and the obligation of MSI to Wilson Township arose under contract law. Both exist independent of the garnishment statute.

coverage over Peterson's injuries, the district court ruled against MSI and found that coverage existed as to the events giving rise to Peterson's claim. The court of appeals affirmed. *Mut. Ser. Cas. Ins. Co. v. Wilson Township,* 603 N.W.2d 151 (Minn.App.1999), *rev. denied* (Minn. Mar. 14, 2000). The fact that MSI was discharged from the first garnishment proceeding did not eliminate its contractual obligation to indemnify Wilson Township under the terms of the insurance policy.

The logic of this conclusion becomes clearer if we remove the peculiar attributes of the *Miller–Shugart* settlement. If we assume that Peterson had gone to trial against Wilson Township and obtained a judgment for $192,500, it would be absurd to suggest that MSI would be discharged from its contractual obligation to indemnify Wilson Township by the failure of Peterson to timely pursue an initial garnishment. *See* Minn.Stat. § 645.17, subd. 1 (2000) (stating that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable). Wilson Township would remain liable to Peterson under the judgment, and MSI would remain obligated to indemnify Wilson Township under the policy. MSI's argument that the discharge of the first garnishment summons precludes a subsequent garnishment would place its insured, Wilson Township, at the mercy of the actions of

Peterson. If MSI were correct, then Wilson Township would remain liable to Peterson, but would have lost its right to be indemnified by MSI because of a failure of Peterson.

It follows that Peterson was free to serve successive garnishment summonses and, so long as MSI's obligation to Wilson had not been altered in the interval, to seek collection from MSI of its judgment against Wilson Township.[7]

We conclude that the discharge of Peterson's first garnishment summons did not alter MSI's obligation to indemnify Wilson Township or Peterson's judgment against Wilson Township; that Peterson was permitted by the 1998 garnishment statute to serve successive garnishment summonses; and that Peterson's timely pursuit of the new garnishment summons supports the judgment for Peterson against MSI for $192,500.[8]

Reversed.

---

**7.** The facts of this case are distinguishable from those in *Lynch v. Hetman,* 559 N.W.2d 124 (Minn.App.1997), *rev. denied* (Minn. Mar. 26, 1997), where the garnishee transferred the debtor's property after the garnishment summons was discharged. Although the judgment creditor was free to serve a second garnishment summons, the discharge relieved the garnishee of any obligation to retain the property and the garnishee was free to transfer that property before another garnishment summons was served. The interpretation of the Minnesota garnishment statute in *Ceridian Corp. v. SCSC Corp.,* 212 F.3d 398 (8th Cir. 2000), to the effect that multiple garnishment

summonses are not permissible where the property sought to be garnished is static, is incorrect. It fails to limit the effect of a garnishment discharge to the obligations that arise under the garnishment statute.

**8.** Because we hold that multiple garnishment summonses are permissible under the 1998 garnishment statute, it is unnecessary to reach the issues of the effect of the 2000 amendments, supplemental relief under Minn. Stat. § 555.08 or vacation of proceedings under Rule 60.02.