Steven **ABRAHAMSON**,
et al., Respondents,

v.

The **ST. LOUIS COUNTY SCHOOL DISTRICT**, Independent School District No. 2142, et al., Appellants,

**Office of Administrative Hearings, Respondent.**

No. A10–2162.

Supreme Court of Minnesota.

Aug. 10, 2012.

Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, MN, for respondents Abrahamson and Kotzian.

Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn & Deans, P.A., Mendota Heights, MN, for appellants.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, St. Paul, MN, for respondent Office of Administrative Hearings.

## OPINION

PAGE, Justice.

This case requires that we interpret provisions of Minn. Stat. chs. 211A and 211B (2010). Specifically, we must determine whether a school district is subject to the campaign-finance reporting requirements found in chapter 211A and whether the complaint in this matter stated a claim under section 211B.06, which prohibits the dissemination of false campaign material. We hold that a school district is a "corporation" under section 211A.01, subdivision 4, and therefore can qualify as a "committee" subject to chapter 211A's campaign-finance reporting requirements if it acts "to promote or defeat a ballot question." Because appellants' complaint, filed with the Office of Administrative Hearings (OAH), stated a prima facie claim that the school district here was a "committee" under section 211A.01, subdivision 4, that "promote[d] ... a ballot question," the administrative law judge assigned to the matter erred in dismissing the complaint without an evidentiary hearing. We also hold that the complaint failed to state a prima facie violation of section 211B.06 with respect to two allegedly false statements. Therefore, we affirm in part, reverse in part, and remand to the OAH for further proceedings consistent with this opinion.

On December 8, 2009, the St. Louis County School District (District) held a special election on a referendum that sought voter authorization for the school district to issue building bonds. At the time the school district passed the resolution to hold the special election, the district included seven schools and approximately 2,000 enrolled students. According to a resolution adopting a long-range facilities plan and approved at the June 8, 2009, school board meeting, enrollment in the school district had declined over the previous ten years by about 800 students and was expected to decline by another 100 students by 2013. The purpose of the long-range plan was to address the enrollment declines and the budget problems accompanying the declines. The District's long-range plan called for the closure of two schools and the construction of two new, more centrally-located, schools. On September 14, 2009, the school board approved the placement of a referendum on the ballot at a special election to be held on December 8, 2009.[1] The ballot question was whether to authorize the school district to issue "school building bonds in an amount not to exceed $78,800,000." Between September 14, 2009, and the special election, the board distributed newsletters and other publications that contained information about the ballot question.

On November 4, 2010, respondents Steven Abrahamson and Tom Kotzian filed a complaint with the OAH against the District and seven school board members. See Minn.Stat. § 211B.32, subd. 1 (2010) (requiring a complaint alleging a violation of chapter 211A or 211B to filed with the OAH). The complaint alleged that the District violated the campaign-finance reporting requirements of Minn. Stat. ch. 211A by not reporting expenditures incurred in promoting passage of the De-

---

1. A school district may, on its own motion, call a special election "to vote on any matter requiring approval of the voters of a district." Minn.Stat. § 205A.05, subd. 1 (2010). Gener-
ally, authorization for a school district to issue building bonds requires voter approval. See Minn.Stat. § 475.58, subd. 1 (2010).

cember 8, 2009, ballot question. The complaint also alleged that the District violated Minn. Stat. § 211B.06 (2010) by disseminating false statements in connection with the ballot question. Specifically, it is alleged the school district contracted with a consulting company that, on its own or through subcontractors, "provid[ed] reports or studies for the District" and "assist[ed] in the preparation of materials to promote the passage of the December ballot question." The complaint also alleged that the District paid the cost of publication and postage for distributing the newsletters or similar publications with public funds. The District did not report its publication and distribution expenditures as allegedly required by chapter 211A.

An administrative law judge (ALJ) dismissed respondents' complaint, without an evidentiary hearing, for failure to state a prima facie case. *See* Minn.Stat. § 211B.33, subd. 2(a). The ALJ ruled that school districts are not subject to chapter 211A's campaign-finance reporting requirements because they do not qualify as "committees" within the meaning of that term in chapter 211A. Alternatively, the ALJ ruled that, even if school districts are "committees," the specific expenses alleged in the complaint to have been unlawful fell within the exemption in the definition of "disbursement" under Minn.Stat. § 211A.01, subd. 6, for election-related expenditures.[2] In reaching these conclusions, the ALJ relied on two previous OAH decisions, both of which held that a school district is not a committee within the meaning of Minn.Stat. § 211A.01, subd. 4, and is therefore not subject to chapter 211A's reporting requirements. *See Barry*

*v. St. Anthony–New Brighton Indep. Sch. Dist. 282* (OAH) (May 21, 2009), *aff'd on other grounds,* 781 N.W.2d 898 (Minn.App. 2010); *Wigley v. Orono Pub. Sch.* (OAH) (May 1, 2008). Finally, the ALJ held that none of the four allegedly false statements recited in the complaint were false.

By writ of certiorari, respondents Abrahamson and Kotzian sought review in the court of appeals of the ALJ's holdings that school districts are not subject to chapter 211A and that the complaint did not state a prima facie violation of section 211B.06 with respect to three of the four statements alleged in the complaint to have been false. The court of appeals affirmed in part, reversed in part, and remanded. *Abrahamson v. St. Louis Cnty. Sch. Dist.,* 802 N.W.2d 393, 406 (Minn.App.2011). The court reversed the ALJ's holding that a school district does not qualify as a committee under chapter 211A, and held that school districts are subject to the campaign-finance reporting requirements of that chapter. *Id.* at 399. The court also reversed the ALJ's holding that the expenditures alleged in the complaint were not "disbursements," concluding that the District's expenditures were neither required nor authorized by law. *Id.* at 403. Finally, the court reversed the ALJ's dismissal of the section 211B.06 claims with respect to two of the statements, but affirmed with respect to another of the statements. *Id.* at 404–06. Abrahamson and Kotzian did not challenge the ALJ's conclusion regarding a fourth statement. *Id.* at 404.

We granted the District's petition for further review. The questions in this case are: (1) whether the St. Louis County

---

2. Financial reporting requirements under section 211A.02 apply to committees that "make[ ] disbursements of more than $750 in a calendar year." Minn. Stat. § 211A.02, subd. 1(a). But, " '[d]isbursement' does not include payment by a county, municipality, school district, or other political subdivision for election-related expenditures required or authorized by law." Minn.Stat. § 211A.01, subd. 6.

School District is a "committee" within the meaning of that term in chapter 211A, and therefore subject to campaign-finance reporting requirements; and (2) whether the complaint stated a prima facie case for violation of the prohibition under Minn. Stat. § 211B.06 against making false statements to promote or defeat a ballot question.

Our review is governed by Minn.Stat. § 14.69 (2010). We may affirm the agency's decision or remand for further proceedings. *Id.* Or, we may reverse or modify the decision "if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are: (a) in violation of constitutional provisions; or (b) in excess of the statutory authority or jurisdiction of the agency; or (c) made upon unlawful procedure; or (d) affected by other error of law; or (e) unsupported by substantial evidence in view of the entire record as submitted; or (f) arbitrary or capricious." *Id.* The posture of this case is similar to a motion to dismiss under Minn. R. Civ. P. 12.03 because the ALJ concluded that the complaint does not state prima facie violations of applicable provisions of chapters 211A and 211B. As a result, we "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of" the complainant. *See Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003).

## I.

■ First, we consider whether the St. Louis County School District is a "committee" within the meaning of chapter 211A and is therefore subject to that chapter's campaign-finance reporting requirements. Whether the District is a "committee" within the meaning of chapter 211A is a question of statutory interpretation, which

we review de novo. *See St. Otto's Home v. Minn. Dep't of Human Servs.,* 437 N.W.2d 35, 39–40 (Minn.1989); *see also State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004). We construe the words of a statute "according to their common and approved usage." Minn.Stat. § 645.08(1) (2010). Our goal in interpreting statutes is to ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (2010). But, when the language of a statute is unambiguous, we will not disregard the letter of the. law to pursue the spirit of the law. *Id.*

As a preliminary matter, we .note that, although the complaint names the District and its individual school board members separately, we refer to the District and school board members collectively as the "District," and do not consider separately whether the school board members themselves constitute a "committee" within the meaning of chapter 211A. We do this because, as we read the complaint, the school board members were named in the complaint only in their official capacities; as such, they act only through the board and only on behalf of the District in that capacity. *See* Minn.Stat. §§ 123B.09, subd. 1 (placing "care, management, and control" of district in school board); 123B.85, subd. 4 (2010) (establishing a school board as the governing body of a school district). Thus, the court of appeals erred when it separately addressed whether individual board members, acting together in their official capacity, are a "committee" within the meaning of chapter 211A. *See Abrahamson,* 802 N.W.2d at 399.

■ We begin with the plain language of the statute. Minnesota Statutes § 211A.02 imposes reporting requirements on "[a] committee or a candidate who receives contributions or makes disbursements of more than $750 in a calendar year." A "committee," in turn, is "a corpo-

ration or association or persons acting together to influence the nomination, election, or defeat of a candidate or to promote or defeat a ballot question." Minn.Stat. § 211A.01, subd. 4. Nothing in the express terms of either section 211A.01 or 211A.02 includes or excludes school districts from the reporting requirements. But, the express terms of section 211A.01, subdivision 4, do include a "corporation."

The District argues that the reference to "corporation" in Minn.Stat. § 211A.01, subd. 4, should be read to exclude public corporations such as school districts. The District further argues that chapter 211A is limited to committees specifically formed to promote or defeat a ballot question, which is not the purpose of forming a school district. Finally, the District argues that characterizing it as a "corporation" within the meaning of chapter 211A is inconsistent with other legal authority that prohibits the expenditure of public funds to promote a favorable vote on a ballot question. We consider, and reject, each of these arguments in light of the plain language of the statute and statutory interpretation principles.

First, although a school district is a public corporation under Minnesota law, see Minn.Stat. § 123A.55 (2010), the District argues that the reference to "corporation" in Minn.Stat. § 211A.01, subd. 4, should not be read to refer to all corporations and, in fact, should be read to specifically exclude school districts. In support of its argument, the District points to several statutes that refer separately to "corporation" and "school district" in the same definition. See Minn.Stat. §§ 181.940, subd. 3 (2010) (including both "corporation" and "school district" in the definition of "employer"); 181.945, subd. 1(c) (2010) (including both "corporation" and "school district" in the definition of "employer"). The District also points to the definition of

"school district" in another provision of election law, Minn.Stat. § 200.02, subd. 19 (2010) (defining "school district" to mean "an independent, special, or county school district").

Given that the Legislature has specifically designated school districts as public corporations, see Minn.Stat. § 123A.55 (2010), excluding school districts from the definition of "corporation" under Minn. Stat. § 211A.01, subd. 4, simply because other statutes refer separately to "corporations" and "school districts" ignores the plain meaning of section 211A.01, subdivision 4. The plain meaning of "corporation" is broad and includes public corporations. See, e.g., American Heritage Dictionary 410 (5th ed.2011) (defining "corporation" as "[a]n entity such as a business, municipality, or organization, that involves more than one person but that has met the legal requirements to operate as a single person, so that it may enter into contracts and engage in transactions under its own identity"); see also Village of Blaine v. Indep. Sch. Dist. No. 12, 272 Minn. 343, 350–51, 138 N.W.2d 32, 38 (1965) (characterizing school districts as "quasi-public corporations"). Had the Legislature intended to exclude school districts from the application of chapter 211A, it could have done so explicitly. In light of the breadth of section 211A.01, we cannot assume that the Legislature intended to exclude public corporations such as school districts from the meaning of the word "corporation." Indeed, the fact that the Legislature used a broad term without limiting its scope is indicative of an intent to encompass all forms of corporate bodies, including public corporations such as school districts. See Minn.Stat. § 645.16 (2010) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.").

Moreover, reading chapter 211A as a whole, as we must, *see* Minn.Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions."), suggests the Legislature contemplated that school districts are subject to chapter 211A's campaign-finance reporting requirements. A "committee" is required to file financial reports if, among other things, it "makes disbursements of more than $750 in a calendar year." Minn.Stat. § 211A.02, subd. 1(a). But, " '[d]isbursement' does not include payment by a county, municipality, school district, or other political subdivision for election-related expenditures required or authorized by law." Minn.Stat. § 211A.01, subd. 6. If school districts were not within the scope of chapter 211A, then it would have been unnecessary for the Legislature to exclude school district expenditures "required or authorized by law" from the statutory definition of "disbursement."

Alternatively, the school district argues it is not a committee because a school district is not "formed to promote or defeat a ballot question." Subdivision 4 of section 211A.01 defines a committee, among other things, as a corporation that "promote[s] or defeat[s] a ballot question." Minn.Stat. § 211A.01, subd. 4. But, the statute refers to the *activities* conducted by the committee, not the reason for the committee's existence. Again, had the Legislature intended to limit the scope of "committees" subject to the reporting requirements of chapter 211A to those "formed" for the purpose of promoting or defeating a ballot question, it could easily have done so. But the word "formed" is not explicitly or by reasonable implication a part of section 211A.01, subdivision 4, and we will not read that word into the statute. *See Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 760 (Minn. 2010) (noting that this court may not add words to a statute).

Finally, the District argues that because public funds cannot be used to advocate one side of a voter issue, it could not have expended funds to promote or defeat a ballot issue and therefore cannot be a "committee" within the meaning of chapter 211A. In making the argument, the District relies on cases decided by courts in other jurisdictions and on an opinion of the Minnesota Attorney General. *See Citizens to Protect Pub. Funds v. Bd. of Educ. of Parsippany–Troy Hills Twp.,* 13 N.J. 172, 98 A.2d 673 (1953); Op. Att'y Gen. 159a–3 (May 24, 1966). Whether public funds can be expended to advocate for only one side of a ballot question is a question of first impression for our court; however, it is a question we need not decide here for two reasons. First, the District's argument misunderstands the purpose of chapter 211A: it does not *authorize* (or prohibit) promotional expenditures; it simply imposes reporting obligations. Second, there is no reason to believe that the Legislature intended to require reporting of only those expenditures authorized by law. In fact, the definition of "disbursement" suggests the opposite conclusion: school district payments that are not for "election-related expenditures *required or authorized by law* " are subject to reporting. *See* Minn. Stat. § 211A.01, subd. 6 (emphasis added). We therefore conclude that the District is a "committee" under Minn.Stat. § 211A.01, subd. 4.

■ Next, we consider whether the complaint alleged sufficient facts to state a prima facie claim that the District promoted the ballot question. Although we conclude that a "committee" need not have been *formed* "to promote or defeat a ballot question," the committee must nevertheless "act[ ] ... to promote or defeat a ballot question" in order to be subject to the reporting requirements of section

211A.02, subdivision 1(a). *See* Minn.Stat. §§ 211A.01, 211A.02. The complaint alleged the District made numerous statements that were promotional by conveying exaggerated statements regarding the District's financial condition and false statements suggesting that defeat of the resolution would cause taxes to increase. The complaint included exhibits to support the allegations. *See* Minn.Stat. § 211B.32, subd. 3 ("The complaint must ... detail the factual basis for the claim that a violation of law has occurred."); *Barry v. St. Anthony–New Brighton Indep. Sch. Dist. 282,* 781 N.W.2d 898, 903 (Minn.App.2010) ("[W]ithout any factual allegations about the content of the [school district's and school board's] communications, there is no basis to conclude that ... the school district and the school board were acting to promote or defeat a ballot question.").

Whether the complaint sufficiently alleged that the District promoted the ballot question depends on the meaning of the term "promote." This is also a question of first impression for our court. We construe words "according to their common and approved usage." Minn.Stat. § 645.08. "Promote" means to "urge the adoption of" or "advocate." *American Heritage Dictionary* 1410 (5th ed.2011).

Here, the materials published by the District in the weeks leading up to the special election included statements that if the referendum was defeated, taxes would "most likely still increase," that defeat of the referendum would lead to district dissolution "as an inevitable consequence," and that defeat of the referendum would "put[ ] every school in the district at the risk of closure." The materials also discussed the numerous ways in which the additional funding would benefit the educational opportunities available to the District's students. These statements, by their very nature, "urge[d]" the passage of the ballot question. Viewing the reasonable inferences to be drawn from these facts in the light most favorable to the complainants, as we must, *see Bodah,* 663 N.W.2d at 553, we conclude that the complaint sufficiently alleges that the statements were promotional. Whether, after the District answers the complaint and the case is fully litigated, the ALJ will ultimately find that these statements were promotional will depend on the evidence before it at that time. *See Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn.2000) (noting that "we will not uphold a [Rule 12] dismissal 'if it is possible on any evidence *which might be produced,* consistent with the pleader's theory, to grant the relief demanded' " (emphasis added) (quoting *N. States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963))). Thus, our conclusion that the complaint states a prima facie claim that the District made promotional statements does not resolve whether Abrahamson and Kotzian will ultimately prevail on their claim.

Because a school district is a "corporation" within the meaning of chapter 211A and because the complaint sufficiently alleges that the District made statements that promoted passage of the ballot question, we affirm the court of appeals' reversal of the ALJ's dismissal of the complaint's chapter 211A claim.[3]

---

3. The ALJ resolved this claim on the alternate ground that even if school districts are subject to chapter 211A's reporting requirements, "[t]he Complainants have failed to point to any authority to support their argument that these election-related expenditures were unlawful or that the School District was prohibited from using any public funds to promote passage of the ballot question." As a result, the ALJ concluded that the "specific expenses at issue" were not "disbursements" under chapter 211A. *See* Minn.Stat. § 211A.01,

## II.

Next, we consider whether the ALJ erred when it dismissed the complaint's claims alleging a violation of Minn.Stat. § 211B.06.

A person is guilty of a gross misdemeanor who intentionally participates in the preparation, dissemination, or broadcast of paid political advertising or campaign material with respect to the ... effect of a ballot question, that is designed or tends to ... promote or defeat a ballot question, that is false, and that the person knows is false or communicates to others with reckless disregard of whether it is false.

Minn.Stat. § 211B.06, subd. 1.

The language of section 211B.06 closely tracks the standard for actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (defining "actual malice" as acting "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not"); *Chafoulias v. Peterson*, 668 N.W.2d 642, 654 (Minn.2003)

(same); *Fitzgerald v. Minn. Chiropractic Ass'n, Inc.*, 294 N.W.2d 269, 270 (Minn. 1980) (defining "actual malice" as "either actual knowledge of the falsity of the publication or reckless disregard of whether it is false or not"). Actual malice can be shown if the statement was fabricated by the defendant, was the product of the defendants imagination, or was based on an unverified source. *Chafoulias*, 668 N.W.2d at 654 (citing *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). "[A] 'highly slanted perspective' ... is not enough by itself to establish actual malice." *Id.* at 655 (quoting *Stokes v. CBS, Inc.*, 25 F.Supp.2d 992, 1004 (D.Minn.1998)).

■ The complaint alleges that four statements made by the District were false; however, only two statements remain at issue here:[4]

● Statement 1:[5] [I]f residents vote no, their taxes will most likely still increase—in some cases, by a large amount. Thats because if the plan is not approved, the school district would

---

subd. 6 (" 'Disbursement' does not include payment by a ... school district ... for election-related expenditures required or authorized by law."). Whether the statements and therefore the expenditures here were required or authorized by law is unclear on this record. Thus, we cannot conclude as a matter of law that these statements and therefore expenditures were required or authorized by law.

We note, however, that other states have addressed whether ballot question expenditures were required or authorized, *see, e.g., Vargas v. City of Salinas*, 46 Cal.4th 1, 92 Cal.Rptr.3d 286, 205 P.3d 207, 229–31 (2009); *Stanson v. Mott*, 17 Cal.3d 206, 130 Cal.Rptr. 697, 551 P.2d 1, 10–11 (1976); *Phillips v. Maurer*, 67 N.Y.2d 672, 499 N.Y.S.2d 675, 490 N.E.2d 542, 543 (1986); *Dollar v. Town of Cary*, 153 N.C.App. 309, 569 S.E.2d 731, 733–34 (2002).

4. Abrahamson did not seek court of appeals review of the ALJ's dismissal of the allega-

tions of the complaint that rested on statement two, so the ALJ's holding with respect to statement two is not before us. Abrahamson argues in his brief to our court that the court of appeals erred in affirming dismissal of the false statement claim with respect to statement four, but because he did not request cross-review of that issue, it is waived. *See* Minn. R. Civ.App. P. 117, subd. 4 (permitting party opposing supreme court review to file response to petition for review and to "conditionally seek review of additional designated issues not raised by the petition"); *see also Peterson v. Wilson Twp.*, 672 N.W.2d 556, 558 n. 3 (Minn.2003) (deeming issue waived because party did not seek cross-review in its response to opposing party's petition for further review).

5. Our numbering scheme is consistent with the numbering of the statements in the complaint.

enter into "statutory operating debt" by June 2011, which means the State of Minnesota recognizes that the school district can no longer balance its expenditures and revenues, and would need to dissolve. Children in this school district would then go to neighboring school districts.

- Statement 3: Projected annual deficit in 2011–12: $4.1 million.

The ALJ dismissed the claims with respect to both of these statements for failure to state a prima facie violation; the court of appeals reversed. *Abrahamson v. St. Louis Cnty. Sch. Dist.*, 802 N.W.2d 393, 404–05 (Minn.App.2011). When we review dismissals for failure to state a claim, we ask "whether the complaint sets forth a legally sufficient claim for relief" and our standard of review is de novo. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003).

### 1. Statement One

■ We begin with the question of whether the complaint established a prima facie violation of section 211B.06 with respect to statement one. The District argues that the complaint was untimely with respect to statement one and that the statement, even if false, does not violate section 211B.06. We agree with the District that the complaint was untimely with respect to statement one.

Under Minn.Stat. § 211B.32, subd. 2, and with exceptions not applicable here, a complaint alleging violations of chapter 211B "must be filed ... within one year after the occurrence of the act or failure to act that is the subject of the complaint." The allegedly false statement appeared on a flyer dated September/October 2009, a copy of which is attached as an exhibit to respondents' complaint. The complaint was filed on November 4, 2010.

The court of appeals did not rule on the school district's argument regarding timeliness, noting "the ALJ did not address whether a claim concerning statement number one was time barred." *Abrahamson*, 802 N.W.2d at 404. Respondents argue this court may not address the timeliness of the complaint with respect to statement one because the argument was not raised previously.

Minnesota Statutes § 211B.36, subd. 5 (2010), provides: "A party aggrieved by a final decision on a complaint filed under [Minn.Stat. § 211B.32] is entitled to judicial review of the decision as provided in [Minn.Stat. §§ 14.63–.69 (2010) ]." In determining whether we can reach the District's arguments concerning the timeliness of the complaint, we therefore turn to sections 14.63 to 14.69. Minnesota Statutes § 14.69 provides:

In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) unsupported by substantial evidence in view of the entire record as submitted; or

(f) arbitrary or capricious.

Because Minn.Stat. § 211B.32, subd. 2, requires the complaint to have been filed within one year of the publication of statement one, the ALJ lacked statutory authority to consider it. *See* Minn.Stat.

§ 14.69(b); *see also Martin v. Morrison Trucking, Inc.*, 803 N.W.2d 365, 369 (Minn. 2011) (interpreting the statute governing the jurisdiction of the workers' compensation court of appeals to determine whether court exceeded its jurisdiction); *Langer v. Comm'r of Revenue*, 773 N.W.2d 77, 81 (Minn.2009) (concluding that tax court lacked subject-matter jurisdiction over a claim because the party failed to comply with the statutorily created time limit to file an appeal). Therefore, we reverse the court of appeals and reinstate the ALJ's dismissal of Abrahamson's section 211B.06 claim with respect to statement one.

### 2. Statement Three

■ Finally, we turn to the question of whether respondents established a prima facie violation of section 211B.06 with respect to statement three: "Projected annual deficit in 2011–12: $4.1 million." The complaint alleges that statement three was based on "worst case" assumptions. The complaint further alleges that the "budget projection was never a realistic budget projection" and, at the time statement three was made, the District "knew that [the budget projections] no longer reflected their actual financial situation." According to the complaint, statement three suggests the District's deficit was increasing, but at the time the statement was made the District's deficit was actually decreasing.

Exhibit H to the complaint includes the following statement: "This 2008–2009 adopted budget shortfall is projected to be $1.5 million. Without adoption of the proposed plan, the projected shortfall would be near $4.1 million for budget year 2011–2012, which would place the district into statutory operating debt." [6] According to the complaint, a $4.1 million shortfall "reflected 'worst case' assumptions" and "was never a realistic budget projection." The complaint questions the objectivity of the entity, Johnson Controls, that developed the District's budgets, noting that Johnson Controls stood to gain from future consulting contracts if voters approved the referendum. The complaint further alleges that actual deficits proved to be far less than the projections.

Although the complaint questions the District's motives in doing so, the complaint acknowledges that the District projected a deficit of $4.1 million for the 2011–12 budget year. Even "a 'highly slanted perspective' ... is not enough by itself to establish actual malice." *Chafoulias*, 668 N.W.2d at 655 (quoting *Stokes*, 25 F.Supp.2d at 1004). Using "worst case" assumptions is more akin to producing a "slanted" statement than it is to producing a statement that is demonstrably false. We thus conclude that the complaint fails to state a prima facie violation of section 211B.06 with respect to statement three. We therefore reverse the court of appeals and reinstate the ALJ's dismissal of Abrahamson's and Kotzian's section 211B.06 claim with respect to statement three.

Affirmed in part, reversed in part, and remanded.

ANDERSON, PAUL H., Justice (concurring).

I concur in the result reached by the court, but I write separately to express my

---

6. The District argues that the claim with respect to statement three fails because the exact phrase "Projected annual deficit in 2011–12: $4.1 million" does not appear in any of the publications referenced in the complaint. Because we ultimately resolve this issue on the merits in the District's favor, and because we "construe all reasonable inferences in favor of" the complainant, *Bodah*, 663 N.W.2d at 553, we decline to decide whether the complaint should have been dismissed with respect to statement three solely because the complaint did not recite verbatim the alleged false statement.

concern that the court's decision may be read to chill the obligation of a school district to educate voters on the purposes and effects of a district-proposed ballot question. The court's decision should not be read to thwart a school board when the board seeks to fulfill this obligation. Notwithstanding Minn.Stat. §§ 211A.01–.02 (2010), our statutes implicitly authorize school districts to make reasonable expenditures to explain a proposed ballot question to voters and to assist voters in reaching an informed decision when voting on that question.

In *Citizens to Protect Public Funds v. Board of Education of Parsippany–Troy Hills Township*, the New Jersey Supreme Court addressed election expenditures by a school district that had proposed a referendum to issue school building bonds. 13 N.J. 172, 98 A.2d 673, 674 (1953). Before the election, the school district's board appropriated funds to print and circulate a publicity booklet entitled "Read the Facts Behind the Parsippany–Troy Hills School Building Program." *Id.* On the cover and on two pages, the booklet said: "Vote Yes." *Id.*

Writing for the New Jersey court, Justice William J. Brennan, Jr.—who 3 years later would become an associate justice on the United States Supreme Court—began by noting that New Jersey school districts had a statutory duty to provide adequate facilities for all schoolchildren. *Id.* at 676. Justice Brennan said:

> Every school district is obligated to provide suitable school facilities and accommodations for all children who reside in the district and desire to attend the public schools therein. . . . The elected board . . . in a township school district . . . with the previous authority of a vote of the legal voters of the district may erect[,] enlarge, [and] improve school buildings and borrow money therefor. . . .

*Id.* (citations omitted) (internal quotation marks omitted) (internal ellipses omitted). Justice Brennan explained that this statutory obligation implicitly conferred authority to school districts to spend public funds educating voters on the consequences of bond referenda. *See id.* ("The power . . . is to be found by necessary or fair implication in the powers expressly conferred. . . ."). Specifically, Justice Brennan concluded that school districts had a right to make

> reasonable expenditures for the purpose of giving voters relevant facts to aid them in reaching an informed judgment when voting upon the proposal. In these days of high costs, projects of this type invariably run into very substantial outlays. This has tended to sharpen the interest of every taxpayer and [voter] in such projects.

*Id.*

As it was in New Jersey in 1953, so it is in Minnesota in 2012. Our statutes require school districts to "furnish school facilities to every child of school age residing in any part of the district." Minn.Stat. § 123B.02, subd. 2 (2010). As Justice Brennan said, "The importance of the proper discharge of this responsibility cannot be overemphasized." *Citizens to Protect Pub. Funds*, 98 A.2d at 676. Further, our statutes expressly authorize school districts to issue school building bonds, Minn. Stat. § 475.52, subd. 5 (2010), and our statutes require districts to obtain the approval of voters before issuing the bonds, Minn.Stat. § 475.58 (2010). In addition, Minnesota school districts have an obligation to provide citizens with a full and fair disclosure of district business. *Cf.* Minn.Stat. § 13D.01, subd. 1(b)(1) (2010) (mandating that all meetings of the governing body of a school district "must be

open to the public"); Minn.Stat. § 123B.09, subds. 10–11 (2010) (requiring school districts to "adequately inform the public" of official proceedings).

Therefore, when viewed as a whole, our statutes implicitly authorize school districts to make reasonable expenditures to educate voters about district-proposed ballot questions. *See Smith v. Dorsey,* 599 So.2d 529, 549 (Miss.1992) ("Recognizing that a school board is tasked under state law with the responsibility of constructing schoolhouse facilities, an implicit incident to this obligation could include reasonable, non-partisan expenditures designed to give the community relevant information to aid in making an informed decision at the polls." (emphasis omitted) (citing *Citizens to Protect Pub. Funds,* 98 A.2d 673)). Our decision in this case does not alter that implied authority.

Read together, Minn.Stat. § 211A.01, subd. 4, and Minn. Stat. § 211A.02, subd. 1, require a school district "acting ... to promote or defeat a ballot question" to report "contributions" or "disbursements of more than $750." In other words, these statutes neither authorize a school district to, nor prohibit a school district from, acting to promote or defeat a ballot question. Rather, these statutes simply provide that if a school district acts to promote or defeat a ballot question, the district may be subject to reporting requirements.[1]

Here, respondents' complaint identified several statements published by the St. Louis County School District (District) that arguably promoted passage of the District's proposed $78,800,000 school-building bond referendum. In particular, the complaint identified District publicity

materials that included the following statements:

- Statement 1: "[I]f residents vote no, their taxes will most likely still increase—in some cases, by a large amount. That's because if the plan is not approved, the school district would enter into 'statutory operating debt' ... and would need to dissolve."
- Statement 2: "[I]f a 'no' vote passes, you'll likely be paying taxes of the district ... that's closest to your home."
- Statement 3: "Projected annual deficit in 2011–12: $4.1 million."

I conclude that respondents' complaint, when all of its allegations are accepted as true and those allegations are viewed in the light most favorable to the respondents, satisfies the threshold imposed by Minn.Stat. § 211B.33, subd. 2(a) (2010). *See Hoffman v. N. States Power Co.,* 764 N.W.2d 34, 42 (Minn.2009). In other words, the complaint "set[s] forth a prima facie violation of chapter 211A" by alleging that the District acted to promote the ballot question. Minn.Stat. § 211B.33, subd. 2(a); *see Barry v. St. Anthony–New Brighton Indep. Sch. Dist. 282,* 781 N.W.2d 898, 902 (Minn.App.2010) (explaining that section 211B.33, subdivision 2(a), requires a complainant to "include evidence or allege facts that, if accepted as true, would be sufficient to prove a violation of chapter 211A" (citing *State v. Larson,* 281 N.W.2d 481, 484 (Minn.1979))).

I note, however, that at this stage of the litigation, it is premature to conclude that the District promoted passage of the ballot question. Thus, I disagree with the court's conclusion that the District's statements "by their very nature 'urge[d]' the

---

1. The court notes that several other courts have adopted a general rule that school districts and other public bodies may not spend public funds to promote ballot questions.

*See, e.g., Smith,* 599 So.2d at 541–42 (collecting cases). The court acknowledges, however, that we have not previously answered that question, ·and we need not answer it here.

passage of the ballot question." Such a conclusion is at a minimum premature and may well be presumptuous, especially because there is no evidence that the District used the words "Vote Yes," or any analogous phrase. *Cf. Citizens to Protect Pub. Funds,* 98 A.2d at 674. But I conclude that the court gets it right two sentences later when it says: "Whether, after the District answers the complaint and the case is fully litigated, the [Administrative Law Judge (ALJ) ] will ultimately find that these statements were promotional will depend on the evidence before [the ALJ] at that time." That is because the question of whether the District promoted the referendum is a fact question to be decided in the first instance by the ALJ.

Therefore, I agree with the court that this matter should be remanded so that the ALJ may hold an evidentiary hearing to consider all of the facts and circumstances relevant to answering that question, as well as any defenses that the District may have. One of those relevant circumstances is the District's right—indeed duty—to educate voters on the purposes and effects of the proposed ballot question, and whether it was that duty that the District fulfilled here.

STRAS, Justice (concurring in part, dissenting in part).

I join Part I of the court's opinion. I also agree that respondents' claim that the St. Louis County School District (District) violated Minn.Stat. § 211B.06 (2010) with respect to statement one is time-barred. *See* Minn.Stat. § 211B.32, subd. 2 (2010) (requiring violations of chapter 211B to be filed within one year after the "occurrence" underlying the complaint). I respectfully dissent, however, from the court's conclusion that respondents failed to allege a prima facie violation of section 211B.06 with respect to statement three:

"[p]rojected annual deficit in 2011–12: $4.1 million."

The court concludes that statement three may have been "slanted," but that it did not rise to the level of a demonstrably false statement sufficient to satisfy the actual malice requirement in section 211B.06. As the court acknowledges, however, we must assume the facts alleged in the complaint are true and draw all reasonable inferences in favor of the complainant in reviewing a dismissal on the pleadings. *See Zutz v. Nelson,* 788 N.W.2d 58, 61 (Minn.2010). In this case, one passage in the complaint directly alleges the falsity of the statement and adequately pleads actual malice by the District. Specifically, respondents allege the District disseminated statement three even though it *"knew* that [the budget projections] no longer reflected [the District's] actual financial situation." Accepting that allegation as true, and construing the complaint liberally, I would conclude that respondents have adequately pled the dissemination of knowingly or recklessly false campaign material by the District in violation of Minn.Stat. § 211B.06. *See Hoffman v. N. States Power Co.,* 764 N.W.2d 34, 45 (Minn.2009) (noting that the complaint is to be liberally construed in reviewing a judgment on the pleadings). Accordingly, I would remand for further proceedings on respondents' claim that statement three violates section 211B.06.

ANDERSON, G. BARRY (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice STRAS.