**Public Funds-General-City**: Regardless of new technology or public health crises, a city may not use public funds to advocate for one side of a ballot question. Minn. Const. Art. 10 § 1, Minn. Stat. §§ 10.60, 412.211



(Cr. Ref. 159a-3, 442a-20)

The Office of
# Minnesota Attorney General Keith Ellison
helping people afford their lives and live with dignity and respect   •   www.ag.state.mn.us

October 27, 2020

**VIA EMAIL:** mmanders@bloomingtonmn.gov

Melissa Manderschied
Bloomington City Attorney
1800 W. Old Shakopee Road
Bloomington, MN 55431-3027

**RE:     Question of Interpretation of Op. Att'y Gen. 159a-3 (May 24, 1966)**

Ms. Manderschied:

Thank you for your correspondence, which this Office received on October 19, 2020. You state that voters in the City of Bloomington are being asked three ballot questions during the November 3, 2020 General Election.  You request an opinion from this Office regarding whether city officials may use written communication such as email and social media to advocate for one side of a ballot question.

As explained further below, we cannot answer your question definitively because the answer turns on whether the City of Bloomington is expending public funds to create, maintain, and use its email and social media accounts, which is a factual determination for the City.  If the written communications you describe would involve the expenditure of public funds, we believe a Minnesota court would likely find them to be unlawful and against public policy.

## BACKGROUND

As you note, this Office has issued several opinions related to this subject.  In 1927, we concluded that spending taxpayer money to pay an association to campaign for one side of a proposed constitutional amendment is "against public policy, and illegal."  Op. Att'y Gen. 442-a-20 (July 18, 1927).  We reasoned that "some of the taxpayers may feel one way and some another," so if a town were to spend public money "for or against some political proposition,

some of the taxpayers will find their money being spent without their consent, campaigning for a proposition to which they are opposed, or vice versa." *Id.*[1]

In 1957 and 1962, we opined that a school district may expend a reasonable amount of public funds to disseminate facts and data about a ballot question so voters can make an informed decision. Op. Att'y Gen. 159b-11 (Sept. 17, 1957); Op. Att'y Gen. 159a-3 (May 25, 1962). We were then asked in 1966 to issue an opinion on three questions: (1) whether a school district may expend a reasonable amount of public funds to create and mail literature urging the passage of a bond issue; (2) whether a school district may expend a reasonable amount of public funds to mail advocacy literature if others paid the cost of creating it; and (3) whether members of the School Board could advocate for passage of the bond issue when making oral presentations to citizens' groups. Op. Att'y Gen. 159a-3 (May 24, 1966).

This Office answered the first two questions in the negative, citing an opinion from the New Jersey Supreme Court that reached the same conclusion. *Id.* (citing *Citizens to Protect Pub. Funds v. Bd. of Ed. of Parsippany–Troy Hills Twp.*, 98 A.2d 673, 676–78 (1953)). Like our 1927 opinion, the New Jersey Supreme Court explained that "[t]he public funds entrusted to the board belong equally to the proponents and opponents of the proposition," so the board cannot use public funds to advocate only one side "without affording the dissenters the opportunity by means of that financed medium to present their side." *Id.* at 677.

As for the third question—whether school board members could orally advocate for passage of a bond issue when presenting to citizens' groups—we concluded that board members "like other public officials, are free to appear before citizens' groups to support their decision and advocate approval of a bond issue." Op. Att'y Gen. 159a-3 (May 24, 1966).

## QUESTIONS

Fifty-four years have passed since our 1966 opinion. As you note, government entities and public officials now have additional methods for communicating with voters like email, websites, and social media, all of which can be utilized through mobile devices. We are also currently in the midst of a global pandemic where in-person gatherings are restricted and discouraged. You ask us to revisit our 1966 opinion in light of these developments. Specifically, you ask the following three questions: (1) during a public health pandemic when gathering in large groups in person is discouraged, may city officials use written communication like email and social media to advocate for one side of a ballot question; (2) when it is again safe for large groups to gather in person, may city officials use written communication like email and social media to advocate for one side of a ballot question; (3) if such written communication is permissible, can a city-issued device or account be used for such purposes as long as the financial cost to the City is *de minimis*?

---

[1] This Office gave similar opinions in 1928 and 1952. Op. Att'y Gen. 442-a-20 (Mar. 16, 1928); Op. Att'y Gen. 442-a-20 (July 10, 1952).

**LEGAL ANALYSIS**

We believe our analysis in the 1966 opinion is still correct, and we decline to extend it. Regardless of new technology or public health crises, the key question remains the same: Is the City or its officials using public funds to advocate for only one side of a ballot question? If the answer is yes, then the expenditure is unlawful and against public policy.

Indeed, the Minnesota Court of Appeals came to the same conclusion in 2011. *Abrahamson v. St. Louis County Sch. Dist.*, 802 N.W.2d 393 (Minn. App. 2011), *aff'd in part, rev'd in part*, 819 N.W.2d 129 (Minn. 2012). The Court held that "although a school district may expend a reasonable amount of funds for the purpose of educating the public about school-district needs and disseminating facts and data, a school district may not expend funds to promote the passage of a ballot question by presenting one-sided information on a voter issue." *Id.* at 403.[2]

The Minnesota Supreme Court granted review, but determined that it did not need to decide that issue because it could resolve the case on other grounds. *Abrahamson v. St. Louis County Sch. Dist.*, 819 N.W.2d 129, 135 (Minn. 2012). Nevertheless, we believe the Court of Appeals decision still supports this Office's long-standing position on this question. *See Fishel v. Encompass Indem. Co.*, A16-1659, 2017 WL 1548630, at *2 (Minn. App. May 1, 2017) (stating that the Court of Appeals "typically follows the rule of law announced in a published opinion, even one subject to further review, until the Minnesota Supreme Court announces a different rule of law").

In addition, the Minnesota State Auditor issued a Statement of Position in 2014 on this subject. The Auditor stated that "it has been generally recognized that elected officials may appear before citizens to orally advocate for a particular position *as long as no expenditure of public funds is involved*." (Emphasis added.)

Turning to your specific questions about city officials using the city's email and social media accounts to advocate in writing for one side of a ballot question, we are unable to answer definitively. The answer turns on whether the City of Bloomington is expending public funds to create, maintain, and use its email and social media accounts, which is a factual determination. This Office does not make factual determinations in its opinions. Op. Att'y Gen. 629-a (May 9, 1975).

If the written communications you describe would involve the expenditure of public funds, then a Minnesota court would likely find them to be unlawful and against public policy. We are not aware of any Minnesota case or statute recognizing an exception for *de*

---

[2] The Court found our opinions to be "instructive" and found the New Jersey Supreme Court case and similar cases in other states to be "persuasive." *Id.* at 401–02.

Melissa Manderschied
Bloomington City Attorney
October 27, 2020
Page 4

*minimis* expenditures of taxpayer money. Until the Legislature says otherwise, we believe that Minnesota courts would find that all unauthorized expenditures are prohibited, no matter how small. *See also, e.g.*, Op. Att'y Gen. 159a-3 (May 24, 1966) (postage is not a permissible expense).

We recognize that the Legislature has addressed the use of publications and websites funded with public money to some extent in Minn. Stat. § 10.60. But we do not believe this statute applies to your questions for at least three reasons. First, the permitted material must be used "to provide information about the duties and jurisdiction of a . . . political subdivision or to facilitate access to public services and information related to the responsibilities or functions of the . . . political subdivision." Second, the Legislature addressed ballot question advocacy only when discussing the Secretary of State's website. Third, section 10.60 existed when the Court of Appeals decided *Abrahamson*, but it did not affect the outcome.

Thank you again for your correspondence.

Sincerely,

/s/ **Jacob Campion**
JACOB CAMPION
Assistant Attorney General

(651) 757-1459 (Voice)
(651) 282-5832 (Fax)
jacob.campion@ag.state.mn.us

|#4832416-v1